UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADAM STAFFORD KING | No. 24 CR 153<br><br>Hon. Keri L. Holleb Hotaling |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR
<u>PRETRIAL RELEASE FROM CUSTODY</u>**

The United States of America, by MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby responds to defendant's Motion for Pretrial Release from Custody (Dkt. 10). For the reasons stated below, defendant's motion should be denied and the Court should order him detained pending trial.

**I. Factual and Procedural Background**

**A. The Investigation and Identification of Defendant.**

As discussed at length in the complaint (Dkt. 1), this investigation began in October 2023 when the FBI accessed the Telegram account of an individual in New York (the "New York Subject") who had been sending and receiving child pornography with another individual located in the Chicago area (the "Chicago Subject") who used the Telegram handle @pervchidude. *See* Dkt. 1 at 17-18. In November 2023, the FBI began using an Online Covert Employee ("OCE") who posed as the New York Subject and continued chatting with the Chicago Subject over Telegram. During those chats, the Chicago Subject (who had previously sent videos containing child pornography to the New York Subject on September 11, 2023) sent videos and images of child

pornography to the OCE. *Id.* at 21-22. Over the next couple months, the Chicago Subject continued chatting with the OCE over Telegram and made several statements that the FBI used to identify him, including: (1) he lives in the Chicago area; (2) his name is Adam; (3) he is a doctor specializing in eyes; (4) he was married; and (5) he and his husband were expecting a child by surrogate to be born in early April 2024. *Id.* at 19-23. The Chicago Subject also sent a photograph of what he represented to be his penis, which appears to be that of a white male wearing medical scrub pants.[1] *Id.* at 23.

Defendant, whose first name is Adam, is a veterinarian and board-certified veterinary ophthalmologist. He resides in Elburn, Illinois and works at MedVet in Chicago. He is also an American Kennel Club ("AKC")-certified dog show judge who travels around the country to judge competitive dog shows and is scheduled to judge the Westminster Dog Show in New York City in May 2024. According to a publicly available online baby registry, defendant and his husband are expecting the birth of a child on March 29, 2024.

During his Telegram chats with the OCE, the Chicago Subject made several references to his travels. Each of those claimed trips aligned with defendant's travel

---

[1] In addition to chatting over Telegram, the FBI also discovered that the New York Subject and the Chicago Subject had communicated over a social media application called Scruff. The FBI obtained Internet Protocol ("IP") records showing where the Chicago Subject's Scruff account had accessed the internet. Those records reflect that on certain dates in 2019 the Chicago Subject's Scruff account accessed the internet at certain hotels in Pennsylvania and Illinois. According to records from those hotels, defendant—Adam Stafford King—had stayed as a registered guest at both hotels on those respective dates. Dkt. 1 at 23.

for his work judging dog shows.[2] The above facts, and many others, led the FBI to identify defendant as the Chicago Subject.

### B. Defendant's Statements about Child Pornography and Abusing Children.

In addition to distributing child pornography and revealing facts about his identity, defendant repeatedly discussed his interest in pedophilia—self-identifying as a "perv," and talking frequently about his favorite ages of children and favorite types of videos.[3]

Defendant also claimed to have sexually abused children himself. For instance, on December 10, 2023, defendant wrote that he had raped a four-year-old "two years ago" after meeting the child's father on Scruff. Ex. 2. And on November 9, 2023, defendant asserted that he "play[s] with nephews and nieces," by drugging them with a "double [] adult dose" of Benadryl. Ex. 3 at 7. Defendant explained that he was careful

---

[2] For example, over the weekend of December 16-17, 2023, the Chicago Subject claimed to be in Orlando, Florida on a "work trip." According to an AKC website, defendant served as a judge for the AKC National Championship dog show held in Orlando that same weekend. On January 25-29, 2024, the Chicago Subject claimed to be in New York City. This trip coincided with an AKC "Meet the Breeds" event held in New York's Jacob K. Javits Convention Center. The Chicago Subject also mentioned a future "work trip to New York in May 2024, and stated that he would be "[s]taying out in queens/flushing." The 2024 Westminster Kennel Club Dog Show—which defendant was announced to judge—is scheduled to take place on May 11-14, 2024 at the USTA Billie Jean King National Tennis Center located in Flushing, Queens, New York. *See* Dog News, *Westminster Kennel Club Announces 2024 Judging Panel*, https://dognews.com/us-news/westminster-kennel-club-announces-2024-judging-panel (last accessed on March 25, 2024) (identifying defendant as a judge).

[3] For example, on November 9, 2023, defendant wrote, "Chicago perv here," and "0-9 my fav[orite]," "B[oy] and g[irl], though prefer b[oy]." On December 10, 2023, defendant reiterated "0-9 my fav[orite]." Defendant also asserted that he possessed an "extensive" collection of child pornography as well as "some personal" videos that he saved in Telegram secret chats. Ex. 1 at 3.

while abusing his nieces and nephews, because he "can't send them home damaged." *Id.*

On several occasions, Defendant wrote about his intention to sexually abuse the unborn child he claimed is due by surrogate in the "in the spring." Defendant discussed his plans to invite a friend over to abuse the child (and twice mentioned inviting the OCE), noting, on November 9, 2023, that "[t]hey're born to suck haha," and stating, "I plan on getting my cock in him asap."[4] Ex. 4. On December 29, 2024, defendant sent a photograph of a baby's outfit he claimed to have received as a gift for Christmas. On January 19, 2024, defendant wrote "[t]he crib is being delivered this weekend." Ex. 6. Defendant also sent ultrasound photographs he claimed to be of the unborn child. Dkt. 1 at 20.

### C. Local Law Enforcement Interviewed Defendant and his Husband Regarding the Downloading of Possible Child Pornography in 2017.

During its investigation, the FBI obtained a report from Aurora Police Department. Ex. 5 (2017 Aurora PD report). The report reflects that on March 30, 2017, the Illinois Attorney General's Office contacted Aurora PD after receiving a cyber tip from the National Center for Missing and Exploited Children ("NCMEC") which was triggered by Google. *Id.* at 1. In summary, Google reported to NCMEC that one of its Gmail users, "seth.curtis223@gmail.com" had uploaded two images that they believed to be child pornography. *Id.* However, "[t]he age of the subject in the images

---

[4] Defendant made several other explicit statements about his plans and desires to abuse the unborn child, but for purposes of brevity the government does not list them all here.

could not be reasonably determined therefore the images provided by Google did not appear to constitute Child Pornography." *Id.* Nevertheless, Aurora PD wrote that "[b]ased on the content of the images, efforts will still be made to contact the user and identify him or her." *Id.* Further investigation by Aurora PD found that the secondary email address used by the suspect 'seth curtis 223' was an aol.com address, which open source research indicated was connected with the defendant. *Id.* at 3.

On April 19, 2017, two Aurora PD officers visited defendant's home to interview defendant and his husband. *Id.* The officers asked defendant whether he had an email address that matched the secondary email address, and defendant confirmed the email was his and that no other people had access to the account. *Id.* However, defendant denied that the seth.curtis223@gmail.com account belonged to him. The officer asked the defendant and his husband whether they used the website Tumblr, to which defendant responded that he used Tumblr "to be honest, to look at porn." *Id.* The officer summarized his interaction with the defendant as follows:

> Adam appeared very nervous and hesitant to answer questions. I explained to him that he was not under arrest and we were just having a conversation. I explained to him that I was speaking to him because I was part of a initiative to combat child exploitation and part of my responsibility was to identify subjects who may need assistance and offer advice. I explained to him that the images I had seen (that I believed he had also seen) were not illegal but indicated a person who was possibly attracted to young males. described the images I had seen and explained why they were not illegal and how they were concerning.

*Id.* The officer also discussed possible resources if either the defendant or his husband needed them. *Id.* At the conclusion of the interview, the officer "determined that both

[the defendant and his husband] used the same laptop and both made indications that they use Tumblr. Neither wished to admit that they were the person using the suspect gmail account," however, both denied searching for illegal content. *Id.* When asked whether a search of defendant's laptop would reveal illegal images, defendant was hesitant. *Id.* The officers ultimately determined they did not have a legal basis to search defendant's electronics and departed the house. Defendant's husband took the lead officer's business card on his way out. *Id.* In summarizing his findings, the reporting officer wrote, "Based on the information provided in the cybertip and the user of the email address used by Adam King, I believed the images in question were accessed by Adam, however the content could not reasonably be determined to be illegal." *Id.* at 4.

**D. The FBI Searches Defendant's House.**

On March 5, 2024, the FBI executed a search warrant at defendant's home in Elburn, Illinois. There, they encountered defendant in the shower with his Apple iPhone. According to a forensic review of defendant's iPhone, the Telegram app had previously been installed, but was deleted. The Scruff app was still installed on the phone. The FBI also found the baby outfit the defendant photographed, and showed the ultrasound photograph to defendant's husband, who recognized it as of the child due by surrogate. When interviewing defendant's husband, the FBI also showed

6

defendant's husband some of the Telegram chats sent by defendant regarding his plans to abuse the newborn. The FBI seized defendant's iPhone.[5]

### E. Defendant is Charged and the Government Moves for Detention.

On March 21, 2024, Defendant was charged by criminal complaint with one count of distributing child pornography, in violation of 18 U.S.C. 2252A(a)(2)(A). Dkt. 1. He was arrested at 6:00 a.m. the next morning. At defendant's initial appearance, the government orally moved to detain defendant pending trial. The Court scheduled defendant's detention hearing for March 26, 2024. Dkt. 6. Defendant now moves for pretrial release. Dkt. 10. In its bail report, Pretrial Services recommends detention.

## II. Legal Standard

Pretrial detention is governed by the Bail Reform Act, codified at 18 U.S.C. §3142. In deciding whether a defendant should be detained pending trial, the Court must hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Specifically, the Court must consider (1) "the nature and circumstances of the offense charged," (2) the weight of the evidence against the person," (3) the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. 3142(g). The evidentiary standard

---

[5] According to flight records, after the FBI searched his home defendant still had plans to fly to California on March 25 to receive the baby being born by surrogate. On March 22, when the FBI arrested defendant, defendant's husband asked one of the agents, "You're doing this now

for detention on the basis that the defendant poses a threat to the community is clear and convincing evidence, whereas the burden of proof as to risk of flight is by preponderance of the evidence. 18 U.S.C. § 3142(f)(2)(B); *United States v. Portes*, 786 F.2d 785 760 (7th Cir. 1985).

### III. Argument

The Court should order defendant detained pending trial. Defendant has not rebutted the presumption of detention, and the § 3142(g) factors—specifically the nature and circumstances of the offense and the nature and seriousness of the danger posed by defendant's release—strongly militate toward detention. Pretrial Services, after interviewing defendant, his proposed custodians and family members, likewise recommends detention. Accordingly, the government has met its burden by clear and convincing evidence and defendant should be detained.

    **A.**    **Defendant has Failed to Rebut the Presumption of Detention as to Danger to the Community.**

As an initial matter, defendant is charged with a detainable offense that carries with it a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Specifically, defendant is charged with "an offense involving a minor victim under section … 2252A." 18 U.S.C. § 3142(e)(3)(E). The presumption shifts the burden of production, but not the burden of persuasion, to the defendant.

---

so he can't get on the plane?" According to an interview with defendant's employer, he had planned to take three weeks of paternity leave.

*Portes*, 786 F.2d at 764. Here, though defendant may arguably have rebutted the presumption as to risk of flight, he has not done so as to the enormous danger he poses to the most vulnerable in our community if he is released.

Defendant specifically points to his "ties to the community, his supportive family, lack of criminal background, steady employment, and availability of a third-party custodian" as rebutting the presumption of detention. Dkt. 10 at 7. Other district courts have found similar representations to be of little weight in rebutting the presumption of detention in cases like this. For example, in *United States v. Hollerich*, in finding that a defendant charged with possession and distribution of child pornography failed to rebut the presumption of detention, a district court judge wrote:

> The fact that he has long standing employment, a stable living arrangement and the support of family and friends is not evidence—in light of the peculiar nature of his charged [child pornography] offenses—that he does not pose further danger to the community. Indeed, the record shows that he had all of those while engaging in the criminal conduct charged. He has proffered no evidence that would suggest that the situation is any *different* now.

2022 WL 16806156, at *4 (W.D. Pa. Nov. 8, 2022); *see also United States v. Grooms*, 2022 WL 1204861 at *2 (N.D. Ill. Apr. 22, 2022) (holding that defendant charged with a child pornography offense failed to rebut the presumption of danger to the community despite having "no criminal history, strong ties to the community, family support, and no pattern of non-appearances."). Here too, the defendant, while committing the alleged offense, had a supportive family, a stable living situation, and employment lasting approximately five years.

9

The only manner in which defendant even attempts to rebut the presumption is by recommending two third-party custodians—his parents. The Court should reject defendant's proposed conditions of release. In his motion, defendant proposes a third-party custodianship whereby (1) defendant's husband would move into his parents' home in Winfield where he will presumably raise the baby after it is born; (2) defendant's parents would move into his house in Elburn, where they will act as third-party custodians. Dkt. 10 at 8. Notably, defendant does not recommend *any* restrictions on his own physical liberty, other than surrendering his passport—no home incarceration, no curfew, no domestic travel restrictions.[6] This is, frankly, not a serious recommendation and it does nothing to ensure defendant cannot move freely about the Chicago area. And while defendant recommends cutting the internet at his house, as other courts have observed, curbing a defendant's internet use is extremely challenging for even the most capable third-party custodian. *See Grooms*, 2022 WL 1204861 at *2 (observing that "[i]mposing conditions of release, such as no use of the internet or internet-capable devices, certainly has some appeal, but they are in reality notoriously difficult to enforce."). In sum, defendant has failed to rebut the presumption of detention.

---

[6] Defendant has also attached a handful of letters of support to his motion. *See* Dkt. 10 Exhibits. However, one of those letters, which is from defendant's in-laws and discusses at length defendant's love of live theater, only further ties defendant to the @pervchidude Telegram account. Indeed, throughout his chats with the FBI OCE, defendant repeatedly discussed his love of Broadway, and listed all the shows he planned to see (and later did see) with his husband during his late-January trip to New York City—while at the same time making repeated comments about his love of pedophilia and child abuse.

10

## B. The § 3142(g) Factors Call for Detention

The facts here, when analyzed under the § 3142(g) factors, require that defendant be detained. First, the nature and circumstances of the offense charged are, to be blunt, heinous. Defendant sent several videos and images of child pornography over Telegram, and bragged about his "extensive" collection, which, according to defendant, included "personal" videos. Defendant also claimed that he had plans to sexually abuse his newborn child and had plans to fly to California with his husband to retrieve that child after its birth. Among the more disturbing aspects of defendant's family situation is that defendant's husband—despite being on notice in 2017 of defendant's deviant sexual internet uploads, and of his 2023 chats describing his plans to abuse the newborn—still had planned to fly to California *with defendant* to retrieve the child from the surrogate mother; it appears the defendant's husband views the current prosecution as an inconvenience. The execution of a federal search warrant and questioning by the FBI did nothing to deter defendant or his husband. Under these circumstances, the Court cannot be sure that the public will be protected when those around the defendant do not appreciate the gravity and danger the defendant poses.

Second, the weight of the evidence here is extremely compelling. The Court has reviewed the complaint, and in signing the complaint found probable cause to believe that defendant committed the offense he is charged with. The evidence here includes Telegram chats that contain both child pornography and ample indicia of defendant's

11

identity, travel and hotel records, IP records, and evidence obtained from defendant's home during the March 5 search warrant execution. Though he is afforded a presumption of innocence, the evidence overwhelmingly demonstrates that defendant knowingly distributed child pornography.[7]

Third, the history and characteristics of the defendant, and the nature and danger to the most vulnerable potential victims in our community, point to detention. This is an extraordinary case due in part to the defendant's statements of past and planned future abuse of children and in part to the impending arrival of a newborn child.[8] In the Telegram chats, defendant claimed he had raped a four year old and his "nephews and nieces," and repeatedly stated his plans to abuse his newborn child upon getting him/her to his home, writing, They're born to suck haha" and mentioning that he intended to rape the child "asap." The defendant also stated his intention to invite "a buddy" to join him in the abuse, twice implying that the OCE should take part,

---

[7] Defendant erroneously asserts that the Court should apply the least amount of weight to the evidence of the defendant's guilt, by citing a case from the Ninth Circuit. Dkt. 10 at 7. But as District Judge James Zagel has previously noted, this decision has not been adopted by the Seventh Circuit, and with good reason. There are many cases where the nature of the offense and the evidence of it may be dispositive. *United States v. Calabrese*, 436 F. Supp. 2d 925, 927 (N.D. Ill. 2006) ("Moreover, it is difficult to see how this factor could always be less important than the others. Were there very strong evidence that a defendant was a serial rapist or killer, this factor alone might outweigh all other factors in determining whether detention is required to protect the community").

[8] As discussed above, defendant also appears to have destroyed evidence by deleting the Telegram application from his phone while in the shower during the execution of the search warrant. During the execution of the search warrant, the FBI agents learned that defendant and his husband had an early warning security detection system that warned defendant and his husband of their arrival before the agents could knock on the front door. Activities by the defendant demonstrating attempts to destroy evidence are relevant to the detention determination. *See Grooms*, 2022 WL 1204861 at *2.

writing "Maybe you'll get to meet my boy 🤣," and "Might have to come and visit my boy when he's born 😜" Such abhorrent statements demonstrate the defendant's dangerousness and should be taken seriously by the Court.

## IV. Conclusion

The government respectfully requests the Court deny defendant's motion and detain him pending trial.

        Respectfully submitted.

        MORRIS PASQUAL
        Acting United States Attorney

By:   /s/ *Brandon D. Stone*
        BRANDON D. STONE
        Assistant U.S. Attorney
        219 South Dearborn St., Rm. 500
        Chicago, Illinois 60604
        (312) 613-9700

Dated: March 26, 2024