**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 24-cr-00153 |
| v. ) | |
| ) | Hon. Keri L. Holleb Hotaling |
| ADAM STAFFORD KING ) | |

**MEMORANDUM OPINION AND ORDER**

This matter came before the Court on the government's motion to detain Defendant Adam Stafford King pending trial in this district pursuant to 18 U.S.C. § 3142(e)(3)(E). On March 21, 2024, this Court found probable cause to issue a criminal complaint and arrest warrant for King for distributing child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A). [*See* Dkts. 1, 5.] At King's initial appearance on March 22, 2024, the government orally moved for pretrial detention. [*See* Dkt. 6]. King filed a Motion for Pretrial Release from Custody [Dkt. 10] and the government filed a written response. [Dkt. 14.] The Court held a detention hearing on March 26, 2024, and orally granted the government's motion for detention. [Dkt. 15.] This Memorandum Opinion and Order further elaborates on the Court's oral rulings at that hearing.

**DISCUSSION**

Pretrial detention is governed by the Bail Reform Act of 1984, codified at Title 18, United States Code, Section 3142. As a general matter, detention pending trial is warranted only if a court finds that no condition or combination of conditions will reasonably assure the appearance of such person as required and the safety of any other person and the community. 18 U.S.C. § 3142(f); *United States v. Portes*, 786 F.2d 758, 760 (7th Cir. 1985); *United States v. Wilks*, 15 F.4th 842, 846 (7th Cir. 2021). In assessing a defendant's risk of flight, the government bears the burden of proof by a preponderance of the evidence. *See Portes*, 786 F.2d at 765. In considering whether a defendant poses a threat of danger to the community, the government bears the burden of proof by clear and

convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *see United States v. Salerno*, 481 U.S. 739, 751 (1987). To determine whether King is a risk of flight and/or a danger to the community, the Court must consider: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). King retains a presumption of innocence and the Court's evaluation of these factors in no way modify or limit this presumption. 18 U.S.C. § 3142(j).

**I. King Failed to Rebut the Presumption of Detention**

In this case, the Bail Reform Act contains a rebuttable presumption that there are no conditions of release that will reasonably assure both the appearance of the defendant and the safety of the community. This is because defendant has been charged with an offense involving a minor victim under 18 U.S.C. § 2252A. *See* 18 U.S.C. § 3142(e)(3)(E). The presumption shifts the burden of production to the Defendant, but not the burden of persuasion. *Portes*, 786 F.2d at 764. Here, the Court finds King has sufficiently rebutted the presumption of detention as to risk of flight. As detailed in the Pretrial Services Report, King has no criminal history, steady employment as a specialty veterinarian,[1] a stable living situation, strong ties to the community, exceptional family support, and no pattern of past non-appearances (as of course would be true of anyone with no criminal history).[2] This evidence is sufficient to meet the burden of production. However, the same is not true regarding danger to the community.

King specifically relies on the same considerations to rebut the presumption of danger to the community. Other district courts have found similar representations insufficient to rebut the

---

[1] At the detention hearing, King's counsel indicated Defendant had been employed until a few days' prior, perhaps calling into question his continued employment.

[2] King also was prepared to surrender his passport and not travel outside of the Northern District of Illinois without prior authorization of the Court.

2

presumption. For example, in *United States v. Hollerich*, the court found that a defendant charged with possession and distribution of child pornography failed to rebut the presumption of detention, holding:

> The fact that he has long standing employment, a stable living arrangement and the support of family and friends is not evidence – in light of the peculiar nature of his charged [child pornography] offenses – that he does not pose further danger to the community. Indeed, the record shows that he had all of those while engaging in the criminal conduct charged. He has proffered no evidence that would suggest that the situation is any *different* now.

*United States v. Hollerich*, No. 2:22-cr-225-1, 2022 WL 16806156, at *4 (W.D. Pa. Nov. 8, 2022) (emphasis in original); *see also*, *United States v. Grooms*, No. 22-CR-128, 2022 WL 1204861, at *2 (N.D. Ill. Apr. 22, 2022) (defendant charged with a child pornography offense failed to rebut the presumption of danger to the community despite having "no criminal history, strong ties to the community, family support, and no pattern of non-appearances."). Here, the Court finds King has not rebutted the presumption of danger to the community with evidence which could serve to mitigate the Court's grave concerns regarding the danger he poses to young children, including his own infant child, if he is released.

## II. The Section 3142(g) Factors Also Weigh in Favor of Detention

Alternatively, as described below, even if the presumption was rebutted, detention is still warranted under the Section 3142(g) factors.

### A. Nature and Circumstances of the Offense

The nature and circumstances of the offense alleged in the criminal complaint are indeed heinous. *See* 18 U.S.C. § 3142(g)(1). The complaint charges that King, utilizing the Telegram Messenger ("Telegram") handle @pervchidude, has been sending and receiving child pornography with an individual in New York (the "New York Subject") since at least October 2023, when the

3

FBI accessed, and covertly took control over, the Telegram account of the New York Subject.[3] Since November 2023, the FBI used an Online Covert Employee ("OCE"), posing as the New York Subject, to surreptitiously continue to chat with King regarding the trafficking of child pornography.

During those chats, King sent videos and images of child pornography, and explained that children "0-9 my fav[orite]" and bragged about his "extensive" child pornography collection, which, according to King, included "some personal" videos. As alleged in the complaint, King also wrote on December 10, 2023, that he had raped a four-year-old "two years ago" after meeting the child's father on Scruff.[4] A few weeks earlier on November 9, 2023, King stated that he "play[s] with nephews and nieces" by drugging them with a "double [] adult dose" of Benadryl and that he was careful while abusing them because he "can't send them home damaged." King also claimed he planned to sexually abuse his own newborn child, noting on November 9, 2023, that "[t]hey're born to suck haha" and stating, "I plan on getting my cock in him asap." King had purchased a plane ticket to fly to California with his husband on March 25, 2024, to meet and bring home his child after its birth by a surrogate. These plans were unchanged, even though on March 5, 2024, the FBI had executed a search warrant at King's home and had found a baby outfit that King had photographed and sent to the OCE. King's iPhone, which was seized, also contained ultrasound photographs of his unborn child, which King also had sent to the OCE. Due to the seriousness of the alleged conduct, the Court finds that this factor weighs heavily in favor of detention.

---

[3] According to the complaint, Telegram Messenger is a mobile and desktop messaging application (or "app") "with a particular focus on speed and security." It can be used on smartphones, such as Apple iOS and Google Android devices, and on desktop computers, by users to send encrypted messages and media to each other. [*See* Dkt. 1, Section III(B).]

[4] Scruff is a free access social networking app that can be accessed on the internet or through the Apple App Store and the Google Play Store. It is available for download globally and, according to the complaint, "was designed for members of the LGBTQIA+ [community], specifically men seeking other men." The FBI stated that the Scruff application was installed on King's iPhone which was seized during execution of the search warrant. [*See* Dkt. 1, Section III(A).]

### B. Weight of the Evidence

Next, the Court considers the weight of the evidence against King, which is very strong.[5] 18 U.S.C. § 3142(g)(2). This Court initially reviewed the complaint and its accompanying sworn affidavit, and, in signing the complaint, found probable cause to believe King committed the offense with which he is charged. The evidence here includes Telegram chats that contain both child pornography and ample indicia of defendant's identity, including travel and hotel records, IP records, and evidence obtained from defendant's home during the execution of the March 5, 2024, search warrant. Additionally, the Court finds particularly troubling (and key amongst the evidence demonstrating his identity) the fact King sent an ultrasound photograph that King's husband later identified as that of the couple's unborn child to the OCE [Dkt. 1, ¶ 84] and the fact that King sent a photo of a baby's onesie to the OCE, which was identical to the onesie found in the closet of his home [Dkt. 1, ¶ 83]. Finally, the Court finds the fact that the FBI discovered King in the shower with his iPhone "despite multiple announcements of the presence by the FBI agents conducting the search," and later analysis revealed the Telegram app had recently been deleted [Dkt. 1, ¶¶ 9-10], to be highly probative. Accordingly, the weight of the evidence favors detention.

### C. Nature and Seriousness of Danger Posed by Release

Next, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(4). During the detention hearing, defense counsel proposed three different individuals to serve as third-party custodians: (1) the Defendant's husband, Lucas King; (2) the Defendant's father, Kirby King; and

---

[5] Defendant King asserts that "the weight to the evidence" should be the least important factor in the Court's 18 U.S.C. §3142(g) analysis, relying on *United States of Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). But *Townsend* has not been adopted by the Seventh Circuit and there may be cases where the weight of the evidence may be dispositive on detention. *United States v. Calabrese*, 436 F. Supp. 2d 925, 927 (N.D. Ill. 2006) ("Moreover, it is difficult to see how this factor could always be less important than others. Were there very strong evidence that a defendant was a serial rapist or killer, this factor alone might outweigh all other factors in determining whether detention is required to protect the community").

(3) the Defendant's father-in-law, Jake Grobe. Each credibly testified that they knew nothing about King's alleged chats with the OCE or the distribution of child pornography alleged in the complaint. In fact, each was shocked by the allegations, despite the close familial relationships. King deftly concealed his alleged illegal activities from his entire family for at least the last six months, if not much longer,[6] and none of the proposed conditions of release would prevent this deception from continuing to occur.

The Court is exceedingly concerned about the potential harm King poses to young children, including his own infant child, considering the very serious allegations in the complaint. To potentially mitigate these concerns, during his detention hearing, King proposed disabling internet service to his house. The Court is not persuaded this will sufficiently address the harm King poses to vulnerable minors because curbing a defendant's internet usage is extremely challenging for even the most capable third-party custodian, particularly since Wi-Fi and internet-capable devices are ubiquitous. *Grooms*, at *4 ("Imposing conditions of release, such as no use of the internet or internet-capable devices, certainly has some appeal, but they are in reality notoriously difficult to enforce. Pretrial Services has no ability to monitor this condition"). Thus, the Court has a significant concern as to whether the proposed conditions can redress the risk of grave danger to the community presented here.

The case King relies heavily on in support of the notion that there are proposed conditions of release that would reasonably assure the safety of the community, *United States v. Monfre*, No. 09-cr-30075, 2009 WL 2031829, at *3 (S.D. Ill. July 10, 2009), is distinguishable in several material ways as well as being too outdated for the Court to rely on here. While many factors are

---

[6] In 2017, local law enforcement interviewed King and his husband at his home regarding two images that were believed to be child pornography, but the "content could not reasonably be determined to be illegal." The officers ultimately determined they did not have a legal basis to search King's electronics and departed the house.

the same here as in *Monfre* (*i.e.*, the chats at issue indicated a present intention to commit a future offense of child molestation; supportive family situation; stable relationship; no criminal record; full-time employment; no history of substance abuse), *Monfre* is distinguishable in at least four ways. First, defendant Monfre began attending Sexual Compulsives Anonymous support group meetings 14 months before the federal charges were brought against him, self-seeking assistance with his compulsions (*id.*); King has not engaged in or sought any type of similar professional support or therapy, despite being on notice since at least 2017 that he was on the radar of authorities for conduct like that with which he is charged here. Second, the probation [Pretrial Services] department recommended release with conditions in *Monfre* (*id.*), which is the opposite situation from that facing the Court here, as Pretrial Services has recommended King's detention [Dkt. 12]. Third, the "chats" in *Monfre* were found to be "internally inconsistent" by the Court and were not fresh (over two years old) (*Monfre*, 2009 WL 2031829, at *3); the King chats with the OCE are completely consistent and are very fresh, taking place up until early 2024. Fourth, while the disconnection of defendant Monfre's home internet service was deemed an acceptable condition of release, that was in 2009 (15 years ago), before today's age of virtually omnipresent internet, free Wi-Fi hotspots, and internet-capable devices (*id.*). Even if the internet is disabled at King's home, Wi-Fi is often readily available from areas surrounding a home. *Grooms*, at *4. The Court finds that the nature and seriousness of danger to the community, and particularly the significant danger to small children, weighs in favor of detention.

      Finally, the Court notes that the history and characteristics of King weigh in favor of release. *See* 18 U.S.C. § 3142(g)(3). But, when considered together with the other 3142(g) factors discussed above, the Court finds that the other three factors heavily outweigh this single factor. The Court hereby finds detention is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that the presumption of detention applies, and even if it did not, the government has demonstrated by clear and convincing evidence that there are no conditions of release for King that can reasonably assure the safety of the community if he was released on conditions. Accordingly, the government's motion for detention pending trial pursuant to 18 U.S.C. § 3142(e) is granted and King's motion for release from custody [Dkt. 10] is denied. Defendant King shall remain in custody pending further order of the Court.

**ENTERED: April 2, 2024**

                                                Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge