UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 24 CR 153 |
| v. | Hon. LaShonda A. Hunt |
| ADAM STAFFORD KING | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR REVOCATION OR AMENDMENT OF DETENTION ORDER**

In late 2023 and early 2024, defendant Adam King used the encrypted app Telegram—under the handle "@pervchidude"—to distribute child pornography online and chat with others about his abuse of young children. In those chats, defendant boasted of his "extensive" collection of child pornography that he stored in secret Telegram chats, sent photographs of a baby outfit and ultrasound photos, and discussed his plans to abuse his soon-to-be born child. Unbeknownst to defendant, in November 2023 an undercover FBI agent had taken over the Telegram account he was chatting with, and that agent elicited several facts from defendant that helped the FBI identify him as the sender of child pornography.[1] Based on these and other facts, the FBI obtained a warrant to search defendant's house.

In March of this year, when FBI agents arrived at defendant's house to execute

---

[1] For a more complete recitation of the facts supporting the FBI's identification of defendant as the sender of child pornography using the Telegram handle "@pervchidude," see the Criminal Complaint (Dkt. 1) and the Government's Response to Defendant's Motion for Release (Dkt. 14).

1

that search warrant, defendant disregarded the agent's commands and hid in the bathroom with his iPhone. A forensic search of that iPhone showed that defendant deleted the Telegram app—and his secret chats along with it—mere seconds before the FBI agents entered the bathroom and seized the phone from his hand. But defendant failed to delete the data from another social media app called Scruff, and a review of his phone showed that defendant had dozens of chat conversations with other individuals and often asked that they contact him on his Telegram account handle, "pervchidude."

On March 26, 2024, Magistrate Judge Holleb Hotaling held a detention hearing in which defendant called three witnesses. The magistrate judge ordered defendant detained—agreeing with the detention recommendation of Pretrial Services—and entered a written opinion and order describing her findings and reasoning for detention. Dkt. 24.

Defendant now asks the Court to revoke that detention order, seeking to be released to home incarceration in the custody of his elderly parents with conditions that he not use or access the internet or be around children. Dkt. 31.

Given the serious nature of defendant's crime, his abhorrent statements of past and planned abuse of prepubescent children, and his successful efforts to destroy evidence, this Court cannot trust defendant or his relatives to enforce any such conditions of release set by the Court. For these reasons and those discussed below, defendant's motion should be denied.

2

## I. Factual and Procedural Background

### A. Defendant's Possession and Distribution of Child Pornography

On March 22, 2024, defendant was arrested on a criminal complaint charging him with one count of distribution of child pornography, in violation of 18 U.S.C. 2252A(a)(1)(A). On March 27, 2024, a grand jury returned a one count indictment, charging defendant with the same offense. The facts in the below section are taken from the affidavit supporting the criminal complaint in this matter, Dkt. 1.

The FBI's investigation into defendant began in October 2023 when the FBI accessed the Telegram account of an individual in New York (the "New York Subject") who had been sending and receiving child pornography with another individual located in the Chicago area (the "Chicago Subject") who used the Telegram handle @pervchidude. *See* Dkt. 1 at 17-18. In November 2023, the FBI began using an Online Covert Employee ("OCE") who posed as the New York Subject and continued chatting with the Chicago Subject over Telegram. *Id.* During those chats, the Chicago Subject (who had previously sent videos containing child pornography to the New York Subject on September 11, 2023) sent videos and images of child pornography to the OCE. For example, on December 11, 2023, @pervchidude sent an approximately 43-second video depicting two white males, aged approximately 9 to 11 years old, performing oral sex on an adult white male's erect penis. *Id.* at 21-22.

Over the next couple months, the Chicago subject continued chatting with the OCE over Telegram and made several statements the FBI used to identify him as

defendant. These include: (1) he lives in the Chicago area; (2) his first name is Adam; (3) he is a doctor specializing in eyes; (4) he is married; and (5) he and his husband were expecting a child by surrogate to be born in early April 2024. *Id.* These facts and others helped the FBI to identify defendant as the Chicago Subject.

In addition to distributing child pornography and revealing facts about his identity, in his Telegram chats, defendant repeatedly discussed his interest in pedophilia—self identifying as a "perv," and talking frequently about his favorite ages of children and favorite types of videos. For example, on November 9, 2023, defendant wrote, "Chicago perv here," and "0-9 my fav[orite]," "B[oy] and g[irl], though prefer b[oy]." On December 10, 2023, defendant reiterated "0-9 my fav[orite]." Defendant also asserted that he possessed an "extensive" collection of child pornography as well as "some personal" videos that he saved in Telegram secret chats. Dkt. 14-1 at 3.

Defendant also claimed to have sexually abused children himself. For instance, on December 10, 2023, defendant wrote that he had raped a four-year-old "two years ago" after meeting the child's father on another online messaging app called Scruff. Dkt. 14-2.[2] And on November 9, 2023, defendant asserted that he "play[s] with nephews and nieces," by drugging them with a "double [] adult dose" of

---

[2] As discussed further in the complaint (Dkt. 1), Scruff is a free access social networking application that can be accessed at https://www.scruff.com/ or through both the Apple, Inc. App Store and the Google, LLC. Play Store. The defendant used Scruff to begin communicating with the New York Subject in September 2023, and as discussed further below, would frequently use Scruff to start conversations with other individuals before asking to move the conversation to Telegram to exchange child pornography. The FBI first used records showing defendant's Scruff account's access of hotel IP addresses to identify defendant. *See* Dkt. 1 at 16-24.

Benadryl. Dkt. 14-3 at 7. Defendant explained that he was careful while abusing his nieces and nephews, because he "can't send them home damaged." *Id.*

On several occasions, Defendant wrote about his intention to sexually abuse the unborn child he stated was due by surrogate in the "in the spring."[3] At that time, defendant and his husband were expecting a child, carried by a surrogate, in April 2024. Defendant also discussed his plans to invite a friend over to abuse the child (and twice mentioned inviting the OCE), noting, on November 9, 2023, that "[t]hey're born to suck haha," and stating, "I plan on getting my cock in him asap."[4] Dkt. 14-4. On December 29, 2024, defendant sent a photograph of a baby's outfit he claimed to have received as a gift for Christmas. Dkt. 1 at 20. Defendant also sent ultrasound photographs he claimed to be of the unborn child. *Id.*

**B. The FBI Searches Defendant's House.**

On March 5, 2024, at approximately 6:00 a.m., the FBI executed a search warrant at defendant's home in Elburn, Illinois. There, they encountered defendant in the master bathroom. Despite repeated warnings by the FBI agents, defendant (who briefly peeked his head out the bathroom door and saw the agents) refused to exit the bathroom. The agents then entered the bathroom to find defendant in the shower holding his Apple iPhone. A review of the agents' body-worn camera video

---

[3] Based on communications with the Illinois Department of Child and Family Services, it is the government's understanding that the child was born to the surrogate and has since been transported to Illinois where the child resides with defendant's husband and in-laws.

[4] Defendant made several other explicit statements about his plans and desires to abuse the unborn child, but for purposes of brevity the government does not list them all here.

shows that the agents encountered defendant naked in his bathroom and holding his iPhone at approximately 6:02:54 a.m.[5]

The FBI also searched defendant's house and found the baby outfit the defendant had photographed and sent over Telegram. During the search, the FBI showed the ultrasound photograph, which defendant had sent over Telegram, to defendant's husband, who recognized it as of the child soon to be due by surrogate. When interviewing defendant's husband, the FBI showed defendant's husband some of the Telegram chats sent by defendant regarding his plans to abuse the newborn. The FBI seized defendant's iPhone from his hand, along with three Apple laptops, and other electronic storage media. A forensic review of one of the laptops found that it is encrypted. That laptop has been sent to a specialized FBI computer laboratory for further review.

## C.    Magistrate Judge Holleb-Hotaling Orders Defendant Detained.

On March 22, 2024, Defendant was arrested on a complaint charging him with distributing child pornography. Dkt. 1. At defendant's initial appearance, the government orally moved to detain defendant pending trial. Dkt. 6. In its bail report, Pretrial Services, after interviewing defendant and his three proposed third-party custodians, recommended detention. Dkt. 12. The defendant and the government

---

[5] The timestamp on the shows "2024-03-05T12:02:54Z" when the agents encounter defendant in the bathroom. According to the FBI, the "Z" on the timestamp is an abbreviation for "Zulu Time," which is another name for UTC +0 or Greenwich Mean Time—a time zone that on the date of the search was six hours ahead of Central Time. Thus, the timestamp of 12:02:54Z indicates that the agents encountered defendant in the bathroom with his iPhone at approximately 6:02:54 a.m.

filed briefs in support of their respective positions. *See* Dkt. 10 (defendant's motion for release); Dkt. 14 (government's response).

On March 26, 2024, Magistrate Judge Keri L. Holleb Hotaling presided over a detention hearing for defendant. The court heard evidence and argument from defense counsel and the government. The government provided further evidence of defendant's chats, his distribution of child pornography, and of his conduct deleting evidence. At that hearing, defendant called as witnesses three potential third-party custodians: (1) defendant's husband Lucas King, (2) defendant's father Kirby King, and (3) defendant's father-in-law, Jake Grobe. Each of defendant's family members expressed complete surprise that he was charged and disclaimed any knowledge of defendant's viewing or distribution of child pornography.

At the end of the hearing, Magistrate Judge Holleb Hotaling ordered defendant detained. Dkt. 15. On April 2, 2024, the magistrate judge issued an opinion and order that "further elaborates on the Court's oral ruling at [the detention] hearing." Dkt. 24 at 1. In that opinion, Judge Holleb Hotaling held that defendant failed to rebut the presumption of detention, finding that his personal characteristics failed to "mitigate the Court's grave concerns regarding the danger he poses to young children, including his own infant child, if released." *Id.* at 3.

The court further held that even assuming defendant had rebutted the presumption, "detention is still warranted under the Section 3142(g) factors." *Id.* at 2-3. Specifically, the court found that the facts, when analyzed under § 3142(g)(1)-(3)

factors weigh "heavily" in favor of detention, even if the history and characteristics of defendant weigh in favor of release. *Id.* at 4-7. With regards to the nature and circumstances of the offense, the court listed several of defendant's statements regarding past abuse of minors and his future plans to abuse his newborn child and noted defendant's plan to fly to California for the birth of his child, despite the FBI recently executing a search warrant at his home. *Id.* at 4. The court found that "this factor weighs heavily in favor of detention." *Id.* Similarly, the Court found the weight of the evidence "very strong" and therefore favoring detention. *Id.* at 5.

Finally, in response to defendant's attempts in his brief to analogize his own case with the defendant released in *United States v. Monfre*, 2009 WL 2031829, at *3 (S.D. Ill. July 10, 2009), the court distinguished the present case in "at least" four material respects: (1) Unlike defendant King, the defendant in *Monfre* had taken steps to seek treatment for his improper sexual conduct; (2) Pretrial Services recommended defendant King be detained (unlike the defendant in *Monfre*, where his release was recommended); (3) defendant King's Telegram chats were considerably more recent and consistent than the defendant in *Monfre*; and (4) access to the internet is far more prevalent and available than it was in 2009 when *Monfre* was decided. *Id.* at 7.

In sum, the court concluded that "the government has demonstrated by clear and convincing evidence that there are no conditions of release for King that can reasonably assure the safety of the community if he was released on conditions." *Id.*

8

at 8.  Accordingly, the court granted the government's motion and ordered defendant detained.  *Id.*

### D.  The FBI Conducts a Forensic Review of Defendant's iPhone and Finds Evidence Tying Defendant to the Charged Conduct.

Since the March 26 detention hearing, the government has discovered additional evidence on defendant's iPhone tying him to the use of Telegram and the @pervchidude Telegram account.

First, data on defendant's iPhone indicates that the Telegram app had previously been installed, but was deleted at approximately 6:02:51 a.m.—i.e., seconds before the agents entered the bathroom.

Second, the FBI discovered that the Scruff app was still installed on defendant's iPhone.  A review of defendant's chats in that app revealed that defendant was chatting with dozens of other men, would frequently ask what they are "into" and then request that they move the conversation to Telegram, each time providing them with his Telegram handle, "@pervchidude."  Two example conversations taken from screenshots of a report showing defendant's Scruff communications are below.  The first chat is dated June 25-26, 2023:

| MESSAGE | SENDER_ID | RECIPIENT_ID | CREATED_AT |
|---|---|---|---|
| Hey | 175692852 | | 6/25/2023 11:03:43 PM |
| Hey | | 175692852 | 6/25/2023 11:04:48 PM |
| What are you into? I'm really open minded also | | 175692852 | 6/25/2023 11:15:48 PM |
| Have tele? | 175692852 | | 6/26/2023 3:11:20 AM |
| Yeah. What's your name on there and I'll message you? | | 175692852 | 6/26/2023 3:17:26 AM |
| Into | 175692852 | | 6/26/2023 6:46:15 AM |
| Hey | | 175692852 | 6/26/2023 6:55:25 AM |
| Pervchidude | 175692852 | | 6/26/2023 12:15:54 PM |
| Yours? | 175692852 | | 6/26/2023 12:15:58 PM |

The second is dated November 10, 2023:[6]

| MESSAGE | SENDER_ID | RECIPIENT_ID | CREATED_AT |
|---|---|---|---|
| Hey | 175692852 | | 11/10/2023 2:35:02 PM |
| Have something to show you on tele! | 175692852 | | 11/10/2023 2:35:10 PM |
| Babysitting | 175692852 | | 11/12/2023 1:42:26 AM |
| Sounds fun bud. What was your telegram again? I have to sign back on | | 175692852 | 11/12/2023 2:50:04 AM |
| Pervchidude | 175692852 | | 11/12/2023 2:51:48 AM |
| Yours? | 175692852 | | 11/12/2023 2:51:54 AM |

In each of the conversations where defendant asked to "move" the chat to Telegram, there were presumably chats and media (photographs and videos) shared. However,

---

[6] There are dozens of such conversations in the Scruff chats on defendant's phone in which defendant asks to move the conversation to Telegram. Indeed, "pervchidude" appears in the chats 68 times.

because defendant deleted the Telegram app from his iPhone, those conversations have been lost and cannot be retrieved.

The Scruff chats found on defendant's iPhone also contain information that identifies the person using defendant's Scruff account as Adam King. For example, in a chat dated November 10, 2023, the Scruff user mentions that he lives in Chicago.

| MESSAGE | SENDER_ID | RECIPIENT_ID | CREATED_AT |
|---|---|---|---|
| Hey there | 175692852 | ■■■ | 11/10/2023 7:53:15 PM |
| Have tele? | 175692852 | ■■■ | 11/10/2023 7:53:18 PM |
| Where u from? | ■■■ | 175692852 | 11/10/2023 9:46:20 PM |
| Chicago here, you? | 175692852 | ■■■ | 11/10/2023 10:32:38 PM |
| Costa Rica | ■■■ | 175692852 | 11/11/2023 9:28:49 PM |

And on June 10, 2023, the Scruff user states that he lives in the "Western suburbs and works in the city" and is married:

| MESSAGE | SENDER_ID | RECIPIENT_ID | CREATED_AT |
|---|---|---|---|
| Western suburbs and work in the city. You? | 175692852 | ■■■ | 6/1/2023 3:26:03 AM |
| North Burbs | ■■■ | 1756928526 | 6/1/2023 3:27:48 AM |
| Nice, and you live alone Sir? | ■■■ | 1756928526 | 6/1/2023 3:27:34 AM |
| {"reacted_to":"cef14bb6408a50e5d3c | ■■■ | 1756928526 | 6/1/2023 3:27:14 AM |
| No, I'm married | 175692852 | ■■■ | 6/1/2023 3:29:21 AM |
| But my husband doesn't know | 175692852 | ■■■ | 6/1/2023 3:29:26 AM |

Additionally, in the below chat, which is timestamped August 1, 2023, defendant states that he "[s]tarted the journey to being a dad!"

| MESSAGE | SENDER_ID | RECIPIENT_ID | CREATED_AT |
|---|---|---|---|
| Started the journey to being a dad! | 175692852 | ███ | 8/1/2023 1:10:19 AM |
| You did? What are you doing?? | ███ | 1756928528 | 8/1/2023 1:10:34 AM |
| Have tele still? | 175692852 | ███ | 8/1/2023 1:10:42 AM |
| I should. What's your username again? | ███ | 1756928528 | 8/1/2023 1:12:04 AM |
| Pervchidude | 175692852 | ███ | 8/1/2023 1:12:17 AM |
| Yours? | 175692852 | ███ | 8/1/2023 1:13:25 AM |
| Messaged you | ███ | 1756928528 | 8/1/2023 1:14:25 AM |
| Responded | 175692852 | ███ | 8/1/2023 1:16:08 AM |

The timing of this statement coincides with defendant and his husband's entering into an surrogacy agreement. These statements, and many others, confirm that defendant was using his Scruff account to communicate with others and then move those chats to Telegram, where defendant would then transmit and receive child pornography using his @pervchidude handle.

## II. Legal Standard

Pretrial detention is governed by the Bail Reform Act, codified at 18 U.S.C. §3142. Under the Bail Reform Act, a defendant may seek review of a magistrate judge's detention order with the district court. 18 U.S.C. § 3145(b). The district court reviews the release order *de novo* and need not defer to the magistrate judge's findings. *See United States v. Messino*, 842 F. Supp. 1107, 1109 (N.D. Ill. 1994). The district judge also has the discretion to receive additional evidence. *Id.* The court may review a transcript of the proceedings before the magistrate judge, or it may hold a new hearing. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). The

12

evidentiary standard for detention on the basis that the defendant poses a threat to the community is clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *United States v. Portes*, 786 F.2d 785 760 (7th Cir. 1985).

In deciding whether a defendant should be detained pending trial, the Court must determine whether "any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Specifically, the Court must consider (1) "the nature and circumstances of the offense charged," (2) the weight of the evidence against the person," (3) the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. 3142(g).

## III. Argument

The Court should deny defendant's motion to revoke or amend the detention order. As Magistrate Judge Holleb Hotaling found, there are no conditions of release that will reasonably assure the safety of the community—in particular the safety of vulnerable potential minor victims. Defendant's motion, which largely amounts to a rehashing of his previous arguments and citations to irrelevant caselaw, should not convince the Court to come to a different conclusion than that of Pretrial Services and the presiding Magistrate Judge.

Defendant has not rebutted the presumption of detention, and the § 3142(g) factors—specifically the nature and circumstances of the offense and the nature and

seriousness of the danger that would be posed by defendant's release—demonstrate that defendant is deceptive and sophisticated, and that no conditions can reasonably assure the safety of any other person in the community. The motion should be denied.

### A.    Defendant Failed to Rebut the Presumption of Detention.

Defendant is charged with a detainable offense that carries with it a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Specifically, defendant is charged with "an offense involving a minor victim under section … 2252A." 18 U.S.C. § 3142(e)(3)(E). The presumption shifts the burden of production, but not the burden of persuasion, to the defendant. *Portes*, 786 F.2d at 764. Here, defendant has failed to rebut the presumption of detention—specifically the very real danger he poses to the most vulnerable in our community if he is released.

Defendant argues that his "ties to the community, his supportive family, lack of criminal background, steady employment, and availability of a third-party custodian" rebut the presumption of detention. Dkt. 10 at 7. But other district courts have found similar representations to be irrelevant to rebutting the presumption of detention in cases like this. For example, in *United States v. Hollerich*, in finding that a defendant charged with possession and distribution of child pornography failed to rebut the presumption of detention, a district court judge wrote:

> The fact that he has long standing employment, a stable living arrangement and the support of family and friends is not evidence—in light of the peculiar nature of his charged [child pornography] offenses—

14

> that he does not pose further danger to the community. Indeed, the record shows that he had all of those while engaging in the criminal conduct charged. He has proffered no evidence that would suggest that the situation is any *different* now.

2022 WL 16806156, at *4 (W.D. Pa. Nov. 8, 2022); *see also United States v. Grooms*, 2022 WL 1204861 at *2 (N.D. Ill. Apr. 22, 2022) (holding that defendant charged with a child pornography offense failed to rebut the presumption of danger to the community despite having "no criminal history, strong ties to the community, family support, and no pattern of non-appearances."). Here too, the defendant, while committing the alleged offense, had a supportive family, a stable living situation, and employment lasting approximately five years.

The only manner in which defendant even attempts to rebut the presumption is by recommending two third-party custodians—his parents—and home incarceration. But such an arrangement will do little to curb defendant's internet use which, as Judge Holleb Hotaling noted, is extremely challenging for even the most capable third-party custodian to monitor. *See Grooms*, 2022 WL 1204861 at *2 (observing that "[i]mposing conditions of release, such as no use of the internet or internet-capable devices, certainly has some appeal, but they are in reality notoriously difficult to enforce."). As discussed above, defendant has shown himself to be sophisticated and deceptive in his use of computers, by using encrypted apps and deleting evidence upon being confronted by the FBI. Defendant's family support and oversight would do little to combat defendant's tactics. Defendant has therefore failed to rebut the presumption of detention.

15

### B. The § 3142(g) Factors Call for Detention

The facts here, when analyzed under the § 3142(g) factors, show that no condition or combination of conditions will reasonably assure the safety of the community. First, the nature and circumstances of the offense charged are, to be blunt, heinous. Defendant sent several videos and images of child pornography over Telegram, and bragged about his "extensive" collection, which, according to defendant, included "personal" videos. Defendant also claimed that he had plans to sexually abuse his newborn child and had purchased a ticket to fly to California with his husband to retrieve that child after its birth—even after federal law enforcement executed a search warrant at his house.

Second, the weight of the evidence here is extremely compelling. Magistrate Judge Holleb Hotaling described the evidence against defendant "very strong." Dkt. 24 at 5. Indeed, the evidence here includes Telegram chats that contain both child pornography and ample indicia of defendant's identity, travel and hotel records, IP records, and evidence obtained from defendant's home and his iPhone seized during the March 5 search warrant execution. Though he is afforded a presumption of innocence, the evidence overwhelmingly demonstrates that defendant knowingly distributed child pornography.

Third, the history and characteristics of the defendant, and the nature and danger to the most vulnerable potential victims in our community, point to the need for detention. This is an extraordinary case due in part to the defendant's statements

16

of past and planned future abuse of children and in part to the arrival of a newborn child.[7]  In the Telegram chats, defendant claimed he had raped a four year old and his "nephews and nieces," and repeatedly stated his plans to abuse his newborn child upon getting him/her to his home, writing, They're born to suck haha" and mentioning that he intended to rape the child "asap."  The defendant also stated his intention to invite "a buddy" to join him in the abuse, twice implying, that the OCE should take part, writing "Maybe you'll get to meet my boy 🤣" (November 9, 2023), and "Might have to come and visit my boy when he's born 😋" Similar statements, though somewhat more discreet, are found throughout defendant's Scruff chats, which came from the iPhone seized by the FBI from defendant's hand.  In sum, defendant has repeatedly claimed to have abused children and made plans to commit future abuse.

In addition, defendant has had prior involvement with law enforcement regarding his viewing of potential child pornography. The fact that defendant continued to view such images after his first encounter is further evidence that defendant knew his conduct was wrongful and continued to participate in trading child pornography. Indeed, in 2017, defendant was interviewed by officers of the Aurora Police Department regarding photographs which potentially were child

---

[7] As discussed above, defendant also appears to have destroyed evidence by deleting the Telegram application from his phone while in the shower during the execution of the search warrant.  During the execution of the search warrant, the FBI agents learned that defendant and his husband had an early warning security detection system that warned defendant and his husband of their arrival before the agents could knock on the front door.  Activities by the defendant demonstrating attempts to destroy evidence are relevant to the detention determination.  *See Grooms*, 2022 WL 1204861 at *2.

pornography and were uploaded using the sethcurtis223@gmail.com account. Although law enforcement ultimately determined that, because the age of the individuals depicted in the photos could not be verified, they did not have probable cause to believe the images were child pornography, law enforcement nonetheless interviewed defendant, who had a secondary email address which was associated with the email address "sethcurtis223@gmail.com." Defendant denied using the sethcurtis account. The officer summarized his interaction with the defendant as follows:

> Adam appeared very nervous and hesitant to answer questions. I explained to him that he was not under arrest and we were just having a conversation. I explained to him that I was speaking to him because I was part of a initiative to combat child exploitation and part of my responsibility was to identify subjects who may need assistance and offer advice. I explained to him that the images I had seen (that I believed he had also seen) were not illegal but indicated a person who was possibly attracted to young males. described the images I had seen and explained why they were not illegal and how they were concerning.

*Id.* The officer also discussed possible resources if either the defendant or his husband needed them. *Id.* At the conclusion of the interview, the officer "determined that both [the defendant and his husband] used the same laptop and both made indications that they use Tumblr. Neither wished to admit that they were the person using the suspect gmail account," however, both denied searching for illegal content. *Id.* When asked whether a search of defendant's laptop would reveal illegal images, defendant was hesitant. *Id.* The officers ultimately determined they did not have a

legal basis to search defendant's electronics and departed the house. Defendant's husband took the lead officer's business card on his way out. *Id.*

### C. Other Courts' Release Determinations in Different Cases are Not Relevant.

Defendant cites several cases involving child pornography charges where the district court ordered the defendant released, claiming that "other courts have, in fact, released similarly situated defendants with more serious charges." Dkt. 31 at 23. Respectfully, the cases cited by defendant are neither analogous nor relevant, given that each bail determination is individual in nature. But perhaps most importantly, none of the cases cited by defendant involve explicit and imminent plans to take custody of and sexually abuse an infant.

For example, defendant cites four cases, *United States v. Siegel*, Case No. 19 CR 391 (N.D. Ill. 2019) (cited at 23), *United States v. Novak*, Case No. 19 CR 475 (N.D. Ill. 2019) (cited at 23), *United States v. Frankenberger*, Case No. 21 CR 304 (N.D. Ill. 2021) (cited at 24), and *United States v. Anderson*, Case No. 21 CR 482 (N.D. Ill. 2021) (cited at 25), claiming that those cases the defendant was facing similar charges but was nonetheless released on bond with conditions. *Id.* at 23-24. But defendant fails to mention that in all four cases the government ***never moved for detention***, and therefore the court merely imposed the conditions agreed upon by the parties, which aligned with Pretrial Services' recommendation for release. *See Siegel*, Dkt. 8 (Release order noting that "[t]he Government and defendant agree to certain conditions of release"); *Novak*, Dkt. 10 ("The Government and defendant agree on

19

certain conditions of release"); *Frankenberger*, Dkt. 9 ("The Government and Defendant agree on conditions of release, which the Court accepts."); *Anderson*, Dkt. 9 ("The government and Defendant agreed on certain conditions of release."). Defendant King cannot credibly claim his situation is remotely analogous to situations in which both the government and Pretrial Services agreed the defendant should be released.

In another instance, defendant cites to a case where the defendant was charged with having committed offenses that had took place long before the defendant was indicted. *See, e.g., United State v. Starck*, Case No. 19 CR 465 (N.D. Ill. 2019), Dkt. 1 (Indictment dated June 4, 2019 alleging child pornography transportation charges involving three videos sent over a year earlier, in February 2018). Here, by contrast, as Judge Holleb Hotaling noted in her opinion, defendant's concerning conduct is "very fresh, taking place up until early 2024." Dkt. 24 at 7.

### D. The Magistrate Judge's Conclusion Regarding the Ubiquity of Access to the Internet was Reasonable.

Defendant claims that Magistrate Judge Holleb Hotaling erred in concluding that preventing defendant from using the internet could prove to be very challenging for defendant's elderly parents. Dkt. 31 at 26-27. In support, defendant claims that the large lot upon which defendant's house sits renders it too far from a neighboring house or structure where defendant might access a Wi-Fi signal. This argument is nonsensical, given that nearly every phone can access the internet without a Wi-Fi

signal, and such restrictions on internet use are "notoriously difficult to enforce." *See Grooms*, 2022 WL 1204861 at *2.[8]

### E. Defendant's Proposed Conditions are not Materially Different than Those Rejected by Judge Holleb Hotaling.

Finally, defendant proposes a series of conditions whereby, among other things, the defendant would be committed to home incarceration in the custody of his parents, who will move into his house in Elburn, Illinois, and the internet will be disabled. Dkt. 31 at 27-28. Respectfully, similar conditions were presented to and rejected by Magistrate Judge Holleb Hotaling. *See* Dkt. 10 at 8-9 (defendant's list of proposed conditions of release). This Court should reject these proposed conditions because, as Judge Holleb Hotaling found, they too fail to mitigate the danger posed by defendant's release.

## IV. Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny defendant's motion.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:    /s/ *Brandon D. Stone*
       BRANDON D. STONE
       Assistant U.S. Attorney
       219 South Dearborn St., Rm. 500

---

[8] Defendant's access to internet here is also concerning because defendant may still have child pornography stored in other locations online, and giving him access may allow him to delete that material, as he did the Telegram app on his iPhone.

21

Chicago, Illinois 60604
(312) 613-9700

Dated: May 6, 2024