UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 24 CR 153 |
| v. | |
| ADAM STAFFORD KING | Judge LaShonda A. Hunt |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
CONSOLIDATED MOTIONS *IN LIMINE***

The United States of America, by its attorney, Andrew Boutros, United States Attorney for the Northern District of Illinois, respectfully responds to defendant's Consolidated Motions *In Limine* as follows:

## I. DEFENDANT'S MOTION TO EXCLUDE SCRUFF AND TELEGRAM CHATS

Defendant moves under Rules 401, 403, and 404(b) to exclude all of defendant's Scruff and Telegram chats. Most of defendant's motions should be denied, as the chats are relevant, not unfairly prejudicial, and do not fall within the ambit of Rule 404(b). Indeed, the government intends to introduce the Scruff and Telegram chats to prove defendant's identity, intent, knowledge, and *modus operandi*. As to for defendant's remaining Rule 403 motions concerning claims of hands-on child abuse, those motions should be denied as moot because the government does not intend to offer the most inflammatory chats into evidence and plans to redact them where appropriate.

### A. Telegram Chats Referencing Defendant's Child

The Court should deny defendant's motion to preclude the introduction of Telegram chats and photos referring to defendant's then unborn child (Dkt. 82 at 3).

1

The chats, which provide detailed information regarding the method of conception, the child's sex, and the child's due date, are relevant to the issue of defendant's identity as @pervchidude. As to the more inflammatory statements regarding defendant's plans to abuse his unborn child, the government can redact them from the Telegram chat, as it does not intend to introduce them into evidence.[1] Therefore, there is no risk of unfair prejudice to defendant, and the remaining chats should be admitted.

In several chats with the covert FBI agent posing as @sb1nyc on Telegram, @pervchidude discussed his yet-unborn son. These chats, among others, assisted law enforcement in confirming @pervchidude's identity as Adam King. For example, on November 9, 2023, @pervchidude wrote, "Just as an FYI you're working on another dad here lol," noting that the "[k]id is due in the spring." @pervchidude further elaborated that he is married to a "husband," that they were "[g]oing through

---

[1] On several occasions in the chat, defendant, over Telegram on the @pervchidude account, discussed his past sexual abuse of minors and his plans to sexually abuse his child after the child's birth. For example, on December 10, 2023, in response to the question "How Yng [sic] have you done?" defendant responded, "Youngest I've fucked was 4". Defendant further explained that "[t]he four year old was two years ago," and that he had met the child victim and his/her father on Scruff. On another occasion, defendant described in lucid detail his past drugging and rape of "nieces and nephews," claiming he "generally sedate[d] them" with "double an adult dose" of Benadryl which "takes 30-45 min" and is "fucking amazing." Defendant also discussed his plans to sexually abuse his unborn child after the child's birth, commenting that "They are born to suck" and that he planned to get his "cock in him ASAP." While the government believes these statements are relevant to show defendant's intent and knowledge regarding the child pornography he sent and received, the government can redact these portions from the Telegram chat and does not intend to introduce the statements into evidence. Accordingly, defendant's motion on this point should be denied as moot.

surrogacy," and identified the sex of the child, writing, "[m]aybe you'll get to meet my boy 🤣." Each of these details aligns with defendant King's biographical background.

@pervchidude made further mentions of his unborn child on Telegram by sending photographs to @sb1nyc. On December 21, 2023, @pervchidude asked, "Did I show you the latest baby ultrasound?" and then sent a fetal ultrasound photo, explaining, "[t]he face is on the left." On December 29, 2023, @pervchidude wrote, "We got so much baby stuff for Christmas!" and sent a photo of a baby's onesie-type outfit. The photos also confirmed @pervchidude as Adam King: the ultrasound photo was later discovered on defendant's iPhone, and the onesie was found by law enforcement during the search of defendant's residence.

All the above chats, which directly mention or are adjacent to defendant's child's birth (and that discuss defendant's family situation), are relevant for purposes of proving defendant's identity as the individual behind the @pervchidude account.[2] These chats are not subject to Rule 404(b), but rather are part of the substantive offense of the charged child pornography offenses. The government is willing to make appropriate redactions to the Telegram chats to remove references to claimed past and future acts of child abuse and can submit a proposed Telegram chat exhibit for the Court's review.

---

[2] Defendant claims the chats are irrelevant but has repeatedly previewed his intention to proceed with an identity defense. *See, e.g.,* Dkt. 82 at 9.

**B.      Chats Discussing Past or Future Planned Child Abuse or Interest in Minors**

As noted above, the government does not intend to offer into evidence statements of defendant's claimed past or future planned acts of hands-on abuse of minor children. However, the government *does* intend to offer into evidence defendant's Telegram chat statements regarding this interest in children in the "single digits" or from ages "0 to 9," because they are relevant to defendant's knowledge and intent in distributing and receiving child pornography. Defendant's motion as to these chats should be denied.

On September 11, 2023, during his Telegram chat with the New York Individual and shortly before exchanging child pornography videos, defendant, operating the @pervchidude account wrote, "Single digits are my fav". Similarly, on December 10, 2023, while chatting with the FBI's covert agent, @pervchidude wrote, "0-9 my fav" and "B and g."[3] These statements, which describe sexual interest in very young children, are relatively anodyne in the context of child pornography cases in the Rule 403 sense but are relevant to show defendant's knowledge and intent in receiving and distributing the child pornography. *See* PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT 916 (2023) (requiring that the defendant "knowingly" received/distributed the child pornography); *see* also *United States v. Knope,* 655 F.3d 647, 657 (7th Cir. 2011) ("The chats show that Knope had expressed interest in having sex with minors in the past," and were "relevant to

---

[3] @pervchidude wrote similar statements of interest on November 9, 2023.

establishing Knope's knowledge, intent, and lack of mistake.") *see also United States v. Chambers,* 642 F.3d 588, 595 (7th Cir. 2011) (sexually explicit online chat was admissible to show motive and intent to entice minor to have sex); *United States v. Zahursky,* 580 F.3d 515, 524–25 (7th Cir. 2009) (same). The statements are therefore admissible, and defendant's motion should be denied.

### C. Chats Describing Defendant's Collection of Child Pornography on Telegram

The Court should deny defendant's motion to exclude chats in which defendant discusses his collection of child pornography videos that he kept on Telegram. These chats are relevant to defendant's state of mind, and to his motive for deleting Telegram from his iPhone during the March 5, 2024 search warrant execution (Count Four). Contrary to defendant's arguments, these statements are not subject to Rule 404(b), but rather are direct evidence of the substantive obstruction offense in Count Four. Their probative value is high and there is no risk of unfair prejudice. Accordingly, the chats should be admitted into evidence at trial.

Several times while chatting with the covert FBI agent on Telegram, defendant discussed his large collection of child pornography videos that he kept on Telegram. For instance, on November 13, 2023, in response to the question "How's your collection looking lately?" defendant writes, "I have a very extensive collection lol." Defendant further states that he keeps his collection on "tele." Similarly, on December 11, 2023, defendant writes that he has "thousands" of videos.

The Scruff chats recovered from defendant's iPhone reflect the same narrative—that defendant exchanged and kept his child pornography on Telegram. For example, on September 26, 2023, defendant wrote to another Scruff user, "I only trade on tele," because "I just prefer to keep my pics off here." On November 8, 2023, defendant told another Scruff user that he used "tele" because it's "[b]etter for vids." *Id.* And on December 26, 2023, defendant wrote on Scruff that he "share[s] on tele only," and that "the encrypted chats are safe." *Id.* These and many other Scruff messages indicate that defendant shared and stored his child pornography on Telegram. Such statements are particularly relevant, because defendant later deleted Telegram (and all data in his account) from his iPhone during the FBI's search warrant execution. Indeed, they are substantive evidence of defendant's obstruction—providing the motive for the Telegram deletion.

Accordingly, the chats describing defendant's collection of child pornography should be admitted, and defendant's motion should be denied.

### D.     Chats Using the Word "Perv"

The Court should deny defendant's motion to exclude Scruff and Telegram chats mentioning the word "perv" for several reasons. First, defendant's Telegram handle, "pervchidude" contains the word perv. While defendant might like the jury to not know that fact, there is no way around it. Second, defendant used the word perv several times in his Telegram communications with the FBI covert agent. For example, on November 9, 2023, defendant identified his location, writing, "Chicago Perv here." Third, one of the government's witnesses—the New York Individual who

exchanged child pornography with defendant on September 11, 2023, will testify that the words "perv" and "pedo," as well as "open-minded" and "no limits" served as coded signals for other individuals who might be looking to exchange child pornography on Scruff and Telegram. The terms are therefore relevant to Counts One through Three.[4]

Moreover, the terms "perv" and "pedo" may imply negative connotations in ordinary parlance, but in a child pornography offense they do not rise to the level of evidence that might be excluded under Rule 403. *See, e.g., United States v. Breton*, 740 F.3d 1, 15 (1st Cir. 2014) ("File and chat room names incorporating lewd, obscene, or graphic terms suggestive of child pornography are, of course, prejudicial to Breton, but not unfairly so."). The Court should therefore deny defendant's motion.

### E.   Chats From Dates Other than September 11 and December 11, 2023

The Court should deny defendant's motion to exclude all Telegram and Scruff chats from dates other than September 11, 2023 (the date of Count One and Two) and December 11, 2023 (the date of Count Three). It is nonsensical for defendant to claim the irrelevance of chats outside these dates, as they are relevant to King's identity as @pervchidude, as well as his knowledge, intent, and *modus operandi*. There is no Rule 403 risk, as the evidence will not be unfairly prejudicial or cumulative, nor will it confuse the jury.

---

[4] Contrary to defendant's claims, these statements are not subject to Rule 404(b), as they are direct evidence of the offenses charged.

From November 9, 2023 to February 14, 2024—an approximately three month period—an FBI agent covertly assumed the @sb1nyc Telegram account to chat with @pervchidude. During those chat conversations, the agent elicited dozens of statements from the @pervchidude user that law enforcement used to identify him as Adam King.[5] Below is a sample of the messages @pervchidude sent over Telegram—on dates other than the two dates of the child pornography offenses—that identify @pervchidude as Adam King:

- On several occasions, @pervchidude stated that he lived in Chicago. On November 9, 2023, he wrote, "Chicago perv here". On December 29, 2023, in response to the FBI agent writing, "I wish we lived closer," @pervchidude wrote, "Move to Chicago!"

- On December 7, 2023, @pervchidude wrote that he works in the "[m]edical field." On December 29, 2023, the FBI covert agent asked @pervchidude "What's your specialty?" In response, @pervchdude wrote, "Eyes". On January 11, 2024, the covert FBI agent asked @pervchidude "What made you want to become an eye doctor?", to which @pervchidude responded, "I just love eyes." At the time of the chats, defendant was working as a veterinary ophthalmologist for MedVet in Chicago.

- On January 22, 2024, @pervchidude revealed his first name as "Adam."

- On November 9, 2023, @pervchidude mentioned that he is married to a husband, and that they were expecting a child by surrogate in the spring of 2024. On November 9 and 13, 2024, @pervchidude identified the unborn child as a "boy."

- Throughout the Telegram chats, @pervchidude discusses his love of Broadway shows and mentions several he attended. For example, on December 19, 2023, @pervchidude wrote, "Seeing Boop tonight," and hours later noted that it was "shockingly good." Flight and hotel records show that defendant was in New York on December 19, and photographs obtained from defendant's iPhone show playbills from several broadway shows on that trip.

---

[5] On December 11, 2023, the agent received a video from @pervchidude that depicted child pornography—this is the subject of Count Three in the second superseding indictment.

All the chats listed above, along with many others not listed above, are relevant to the issue of identity.[6]

Furthermore, many of the Telegram and Scruff chats from dates outside the dates of Counts One-Three are relevant to show defendant's knowledge, intent, and *modus operandi*. For example, there are hundreds of Scruff chats found on defendant's iPhone in which defendant connects with individuals on Scruff and then suggests moving the conversation to Telegram. These chats follow the exact pattern @pervchidude followed in trading videos of child pornography with @sb1nyc. And as noted above, on several dates, @pervchidude discussed his interest in very young children. The mere fact that these chats did not take place on September 11 and December 11 does not make them irrelevant under Rule 401 or prejudicial under Rule 403. Defendant's motion should be denied.

## II.    MOTION TO PRECLUDE EVIDENCE OF OTHER ADULT SEXUAL CONDUCT

Defendant moves to bar evidence and testimony regarding defendant's sexual conduct outside his marriage. The government does not intend to introduce any such evidence at trial except in a very narrow circumstance—namely if defendant claims at trial that someone else must have been using his phone, the government on

---

[6] On the issue of identity, defendant cannot have it both ways. If defendant wants to stipulate to having been the person behind the @pervchidude account on September 11 and December 11, 2023, then the messages that tend to identify @pervchidude as Adam King on those and other dates do indeed become decidedly less relevant. But here, it appears that defendant will be proceeding with an identity defense, claiming that it was someone else operating the @pervchidude Telegram account. *See, e.g.,* Dkt. 82 at 9 (arguing that "[t]je government will be unable to prove by any standard that Mr. King . . . was the individual who sent the chats themselves."). The statements sent by @pervchidude are therefore relevant to the issue of identity and should be admitted

rebuttal may call some of the individuals who communicated with defendant over text, and later met up with him—thus proving that it was indeed defendant using his iPhone around the dates in question.

### III. EVIDENCE REGARDING DEFENDANT'S INTERACTIONS WITH THE INDIVIDUAL CHARGED WITH SEX OFFENSES IN WISCONSIN

The government does not intend to elicit any testimony or present any evidence regarding this individual at trial. Thus, defendant's motion can be denied as moot.

### IV. ALLEGATIONS OF INAPPROPRIATE CONDUCT AT WORK

The government does not intend to elicit any testimony or present any evidence regarding defendant's workplace misconduct at MedVet at trial. Defendant's motion can be denied as moot.

### V. THE INTRODUCTION OF OTHER SEXUAL CONDUCT FOUND ON DEVICES.

The Court should deny defendant's motion to exclude all sexual content found on defendant's devices. The Court should deny defendant's motion, as much of this evidence is relevant to defendant's identity as the individual operating the @pervchidude account when sending and receiving child pornography.

#### A. Photos of Genitalia

The Court should deny defendant's motion to exclude photos of adult genitals found on his iPhone. When @pervchidude communicated with @sb1nyc on September 11, 2023, he sent and received several photos and videos depicting adult male genitalia. Similarly, while @pervchidude was communicating with the covert FBI agent from November 2023 to February 2024, he sent several photos of genitalia—many of which show a white male wearing medical scrubs. These photos, which were

sent over Telegram, were later discovered on defendant's iPhone which was seized from his hand during the search warrant execution. They are therefore evidence that @pervchidude is Adam King and are therefore admissible.[7]

### B. Evidence of Adult Pornography

Defendant moves to exclude all adult pornography found on defendant's iPhone under Rules 401 and 403. The government does not intend to offer adult pornography found on defendant's iPhone into evidence, *except* as described above. Many of the photographs and videos of genitalia sent over Telegram might be considered pornography. Accordingly, to the extent defendant's motion seeks to limit the introduction of those photos and videos into evidence, it should be denied.

### C. Unidentified Sexually Explicit Photos or Videos

Defendant moves to bar the introduction of photos and videos that "are not CSAM but are obscene." Dkt. 82 at 18. While it is not entirely clear what defendant is referring to, as noted above the government does not intend to offer adult pornography into evidence, other than the above-discussed photos and videos of genitalia.

## VI. LIMITING CHILD PORNOGRAPHY VIDEOS AND IMAGES SHOWN TO JURY

Defendant moves to limit the number and length of videos containing child pornography that will be played for the jury at trial. While the government will crop

---

[7] The government will redact the photos as appropriate so as to be less obscene, however some detail of the photos will be needed to allow the jury to match the photos sent over Telegram to those found on defendant's iPhone.

the videos to limit the amount of time the jury has to view the videos in question, the Court should not require the government to limit the *number* of videos shown to the jury.

On September 11, 2023, defendant and @sb1nyc exchanged 10 videos (five each way) containing child pornography over Telegram. The distribution and receipt of these videos are the subject of Counts One and Two in the Second Superseding Indictment. On December 11, 2023, defendant sent @sb1nyc (which had been taken over by an FBI agent) one additional video containing child pornography. The distribution of this video is the subject of Count Three.

At trial, the government intends to show the jury (1) the video of the September 11, 2023 chats on the New York Individual's iPhone, and (2) shortened versions of the child pornography videos—enough to allow the jury to determine that the victims are, in fact, children, while also avoiding any unfair prejudice that might come from viewing the videos for too long. *See, e.g., United States v. West*, 53 F.4th 1104, 1108 (7th Cir. 2022) ("[E]ven if West had stipulated that the exhibits contained child pornography, their brief publication to the jury helped the government prove that a person accessing the images would be immediately aware of their illicit nature."); *see also United States v. Hatfield*, 358 F. App'x 692, 696 (7th Cir. 2009) ("Although prejudicial, the clips of the 12 videos were not unfairly so, and because they were central to the charged conduct the government had the right to present them to the jury.").

The government plans to show the videos to the Court and defense counsel before trial.

## VII. DISCUSSION OF CRIMINAL INVESTIGATION INTO TELEGRAM

The government does not anticipate discussing any potential criminal investigations into the encrypted messaging application Telegram. Accordingly, defendant's motion should be denied as moot.

## VIII. MOTION TO PROHIBIT THE SHOWING OF BODYWORN CAMERA FOOTAGE OF THE SEARCH WARRANT EXECUTION

The Court should deny defendant's motion to exclude the bodyworn camera video footage of the March 5, 2024 search warrant execution. The footage is of course relevant— despite the FBI agents' clear commands, defendant can be seen refusing to exit the bathroom while holding his iPhone in his hand. When the agent reaches defendant, the iPhone is glowing as if defendant was using it. Such evidence is direct evidence of Count Four—namely, that defendant deleted Telegram (and all of the child pornography he claimed to have saved on Telegram) from his phone during the search warrant execution. The government will attempt to redact any nudity from the video and will play the video for the court and defense counsel before trial.

## IX. WITNESS TESTIMONY REGARDING DEFENDANT'S OWNERSHIP OR OPERATION OF THE SCRUFF AND TELEGRAM ACCOUNTS

The Court should deny defendant's motion to bar government witnesses from testifying that defendant operated the Scruff and Telegram accounts

Defendant erroneously claims that "there is no individual complaining witness or law enforcement witness" that can connect defendant to any devices or accounts at

issue. This is flat wrong. As documented on bodyworn camera, during the March 5, 2024 search warrant execution, FBI agents encountered defendant in his bathroom refusing their commands to exit. When SA Mike Devine agent approached defendant in the bathroom, defendant had his iPhone in his hand and glowing, as if he had just been using it. A forensic review of the iPhone *seized from defendant's hand* revealed that Telegram had been deleted mere seconds before the agents encountered defendant, and that the Scruff chats—hundreds of which reflect a near identical *modus operandi* of seeking child pornography on Telegram—remained on the phone. Defendant's statements that no eyewitness can tie defendant to the phone or accounts in question are simply incorrect.

## X. EVIDENCE OF DEFENDANT'S 2017 INTERACTION WITH LAW ENFORCEMENT

The Court should deny defendant's motion to exclude evidence and testimony regarding defendant's 2017 interaction with Aurora Police, who visited defendant at his residence to discuss his downloading of suspected child pornography. As discussed in the government's Consolidated Motions *in Limine* (Dkt. 85 at 6-9), testimony and evidence regarding the event is admissible under Rule 414, and the government should be permitted to argue propensity arising from defendant's past conduct.

## XI. USE OF LAW ENFORCEMENT TERMS BY GOVERNMENT WITNESSES

The Court should deny defendant's motion to prohibit law enforcement witnesses from using standard law enforcement terms such as crimes against children and violent crime during their testimony. These terms are not unfairly

prejudicial and tellingly, defendant cites no cases in support of this motion. The motion should be denied.

## XII. WITNESS TESTIMONY REGARDING THE IMPACT OF THE CHILD PORNOGRAPHY OFFENSES

Defendant moves at page 26 of his motions to limit the testimony of victims identified in certain of the videos of child pornography exchanged by defendant. The government does not anticipate eliciting any testimony from the witnesses regarding the impact of the offense on their lives. Rather, the government intends to ask the witnesses to identify the victims in the videos and to describe their ages at the time the videos were made. Such testimony is directly relevant to the child pornography offenses and should be admitted at trial.

## XIII. SEPTEMBER 11, 2023 TELEGRAM CHATS VIDEO

The Court should deny defendant's motion to exclude the September 11, 2023 Telegram chats under Rule 901. At trial, the government anticipates that the New York Individual will testify to operating the @sb1nyc account, chatting with an individual on Scruff and Telegram, and exchanging child pornography with @pervchidude on September 11, 2023. He will also testify that after the FBI executed a search warrant on his apartment, he gave up his iPhone, which contained the September 11 chats with @pervchidude. He will also The New York Individual will also review a redacted version of these chats and testify to their authenticity. Additionally, the FBI case agent who examined the phone seized form the New York Individual will testify to taking the video of those chats while examining the New

15

York Individual's iPhone. The Seventh Circuit has ruled that nothing more is needed to authenticate the video. *See, e.g., United States v. Brewer*, 915 F.3d 408, 417 (7th Cir. 2019) ("Rule 901 does not expressly describe how videotape evidence may be authenticated, but we have held that the government can authenticate a recording 'by offering testimony of an eyewitness that the recording accurately reflects' the events as they occurred." (quoting *United States v. Eberhart*, 467 F.3d 659, 667 (7th Cir. 2006)). Indeed, authentication is a low bar the government will easily clear. The motion should be denied.

Dated: April 8, 2025                    Respectfully submitted,

                                        Andrew Boutros
                                        United States Attorney

                        By:     */s/ Brandon D. Stone*
                                        BRANDON D. STONE
                                        ASHEEKA DESAI
                                        Assistant United States Attorneys
                                        219 South Dearborn Street, Fifth Floor
                                        Chicago, Illinois 60604
                                        (312) 353-5300