UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 24 CR 153 |
| v. | ) |
| | ) Judge LaShonda A. Hunt |
| ADAM STAFFORD KING | ) |

**GOVERNMENT'S NOTICE OF INTENT TO
INTRODUCE "OTHER ACTS" EVIDENCE UNDER RULE 404(b)**

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits the following motion to admit "other acts" evidence under Federal Rule of Evidence 404(b).

I. **FACTUAL BACKGROUND**

Defendant Adam King is charged with distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Counts One and Three), receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count Two), and obstruction related to the destruction of evidence, in violation of 18 U.S.C. § 1519 (Count Four).

In summary, the evidence will show that on August 14, 2023, defendant began communicating with an individual in New York (the "New York Individual") over a dating app called Scruff. The New York Individual used the username "B //" on Scruff and the defendant used the username "// openminded \\".[1] Their initial conversation

---

[1] The government anticipates that the New York Individual will testify at trial that individuals seeking to trade child pornography on Scruff will sometimes use code words to indicate their interest. Among those code words are the word "open minded" and the use of two forward slashes in a person's profile name, profile description, and/or chats exchanged.

1

is reproduced verbatim below:

| Date and Time | From | To | Content |
|---|---|---|---|
| 8/14/2023 12:34:17 PM UTC | Defendant King | New York Individual | Hey |
| 8/14/2023 12:34:19 PM UTC | Defendant King | New York Individual | What's up? |
| 8/14/2023 12:44:05 PM UTC | Defendant King | New York Individual | [Photograph sent] |
| 8/16/2023 7:27:22 PM UTC | New York Individual | Defendant King | Fuck what a sexy perv cock |
| 8/16/2023 8:08:03 PM UTC | Defendant King | New York Individual | Thanks man |
| 8/16/2023 8:08:05 PM UTC | Defendant King | New York Individual | Into? |
| 8/17/2023 4:23:35 PM UTC | New York Individual | Defendant King | No limits here. You? |
| 8/17/2023 4:32:15 PM UTC | Defendant King | New York Individual | Same. What's your tele? |

The New York Individual did not respond to defendant for several days. Defendant then sent several more messages to the New York Individual on Scruff on August 22, 2023, August 28, 2023, September 3, 2023, and September 6, 2023 in an attempt to reconnect. On September 11, 2023, the New York Individual responded to defendant, who suggested moving the conversation to the encrypted messaging app Telegram. These messages are reproduced verbatim below:

| Date and Time | From | To | Content |
|---|---|---|---|
| 9/6/2023 9:04:43 PM UTC | Defendant King | New York Individual | What're you doing? |
| 9/11/2023 5:37:48 PM UTC | New York Individual | Defendant King | Fuck nice prv cock |
| 9/11/2023 5:37:53 PM UTC | New York Individual | Defendant King | Just got home from the gym |
| 9/11/2023 6:04:01 PM UTC | Defendant King | New York Individual | Nice man |
| 9/11/2023 | Defendant King | New York | What's your tele? |

2

| | | | |
|---|---|---|---|
| 6:04:04 PM UTC | | Individual | |
| 9/11/2023 6:09:22 PM UTC | New York Individual | Defendant King | @sb1nyc |
| 9/11/2023 6:17:30 PM UTC | Defendant King | New York Individual | Sent. |

At 2:16 PM EST (6:16 PM UTC) on September 11, 2023, defendant using the handle @pervchidude, messaged the New York Individual, using the handle @sb1nyc, on Telegram, stating "Hey from scruff". Defendant and the New York Individual then exchanged several messages on Telegram, during which defendant stated "single digits are my fav". Using Telegram, defendant and the New York Individual then exchanged 10 videos (five from each) containing child pornography. They also exchanged several photographs, including of male genitals.

After the initial exchange of child pornography, and for the next few months, defendant continued communicating with the New York Individual's Telegram account, which, unbeknownst to defendant, was taken over by an FBI agent on October 5, 2023. In those text conversations, defendant discussed his sexual attraction to children, and preferably boys, calling "0 to 9 my fav" and stating, "B and g, though prefer b". Defendant also claimed to have sexually assaulted his nieces and nephews by sedating them with "double an adult dose" of Benadryl, which defendant stated provides a "wide safety margin". Defendant further boasted about having an "extensive collection" of child pornography that he kept on Telegram. On December 11, 2023, defendant sent @sb1nyc another child pornography video through Telegram.

Defendant also made dozens of statements in the Telegram chat that law

3

enforcement used to identify Dr. Adam Stafford King as @pervchidude. These statements include, among others, defendant's first name ("Adam"), his residence ("Chicago"), his marital status ("Married" to a "husband"), his profession (a "doctor" specializing in "eyes"), and that he and his husband were expecting a baby by surrogate "in the spring." With regards to the unborn child, defendant sent photos of an ultrasound and a baby onesie-type outfit, and repeatedly discussed his future plans to sexually assault the child.[2]

In addition to biographical details, defendant discussed trips he took in late 2023 and early 2024, including to Orlando, Florida, Newark, New Jersey, and New York City. Defendant provided details about his trips, including the dates of travel, the hotels where he stayed, and the Broadway shows he saw. Based on this and other information, law enforcement obtained a search warrant for defendant's residence in Elburn, Illinois.

The FBI executed the warrant on March 5, 2024, with many agents wearing body worn cameras ("BWC"). The agents encountered defendant in the master bathroom, as he refused to obey their commands to come out. An FBI agent entered the bathroom and observed defendant holding his Apple iPhone, which can be seen on the BWC video unlocked and glowing in defendant's hand. The agent immediately seized the phone from defendant. In the nursery closet of defendant's home, the

---

[2] On November 9, 2023, the Undercover Agent and defendant had a conversation regarding defendant's unborn son. The Undercover Agent sent a Telegram message to defendant asking how long after defendant's son is born will defendant wait before he "take[s] advantage". In response, defendant states "They're born to suck haha" and then states, "I plan on getting my cock in him asap". The government does not seek to admit any messages regarding defendant's future intentions to sexually abuse his son, who was due to be born in the spring of 2024.

4

agents found the onesie from the Telegram chat photo.

A forensic search of defendant's iPhone revealed that defendant had deleted the Telegram app and access to its cloud-based contents seconds before the agent seized his phone. The forensic search also revealed, among other things, (1) photographs @pervchidude sent and received with the New York Individual over Telegram on September 11, 2023; (2) photographs @pervchidude sent the covert FBI agent over Telegram; (3) the New York Individual's first and last name saved in the notes application; (4) Apple Calendar entries matching travel @pervchidude discussed in the Telegram chat; (5) photographs of playbills to Broadway shows @pervchidude had discussed over Telegram.  The Scruff app was found installed on defendant's iPhone, along with thousands of Scruff chat messages with defendant using the same account that previously communicated with the New York Individual, as well as another Scruff account. According to the Scruff chats found on defendant's iPhone, he provided his Telegram handle, @pervchidude, to individuals on 68 occasions between February 11, 2023 and January 6, 2024, and repeatedly discussed keeping his "vids" on "Tele" because it was "better for vids", "safe" and "secure."

## II. PROFFERED OTHER ACTS EVIDENCE

### A. Scruff Chats Referencing Sexual Interests and Telegram

A forensic search of defendant's iPhone revealed that the Scruff app was installed on defendant's iPhone, along with over 8,000 Scruff chat messages between defendant and other Scruff users. In these messages, defendant used the same account that previously communicated with the New York Individual (Account ID 175692852), as well as another Scruff account (Account ID 176508657). Defendant's

5

iPhone contained messages from the first Scruff account with Account ID 175692852 from approximately June 30, 2022 to approximately December 25, 2023 and messages from the second Scruff account with Account ID176508657 from approximately December 24, 2023 to approximately January 11, 2024.

In these thousands of messages, defendant connects with other Scruff users, expresses his sexual interests, asks the users what they are "into," requests their Telegram handle, and then suggests moving the conversations to Telegram. The content of a few of defendant's Scruff chats that demonstrate this pattern and which the government seeks to admit are reproduced verbatim and attached as Government Exhibit A.

### B. Telegram Chats Referencing Defendant Having a Collection of Child Pornography on Telegram

On numerous occasions between November 9, 2023 and December 11, 2023, defendant repeatedly references that he has a large collection of child pornography videos that he stores on Telegram. Relevant portions of these conversations which the government seeks to admit are reproduced verbatim and attached as Government Exhibit B.

### C. Telegram Chats Referencing Defendant's Sexual Interest in Prepubescent Children

On September 11, 2023, defendant communicated with the New York Individual on Telegram. The government seeks to admit evidence that in these text conversations, just prior to exchanging child pornography with the New York Individual, defendant stated "single digits are my fav", indicating a sexual preference

6

for children under the age of ten years old. Defendant and the New York Individual then exchanged ten videos (five from each) containing child pornography depicting prepubescent children.

Unbeknownst to defendant, the New York Individual's Telegram account was taken over by an FBI agent on October 5, 2023. On or about November 9, 2023, defendant and the undercover FBI agent posing as the New York Individual began communicating again on Telegram. In these text conversations, defendant repeatedly references his sexual interest in prepubescent children. Relevant portions of just a few of these conversations which the government seeks to admit are reproduced verbatim and attached in Government Exhibit C.

### III. LEGAL ARGUMENT REGARDING ADMISSIBILITY OF EVIDENCE UNDER RULE 404(b)

#### A. Basic Legal Framework

Relevant evidence is admissible at trial. Fed. R. Evid. 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence bearing on the elements of the crimes charged in the indictment is relevant evidence.

Under Federal Rule of Evidence 404(b)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(1); *see also Gomez*, 763 F.3d at 852. "The rule, however, does not impose a categorical bar to evidence of other acts." *United States v. Thomas*, 897 F.3d 807, 812 (7th Cir. 2018). It

7

expressly allows such evidence to be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Such evidence is admissible as long as its admission "is supported by some propensity-free chain of reasoning," and its probative value is not substantially outweighed by a danger of unfair prejudice. *Gomez*, 763 F.3d at 856–57. The admission of evidence under Rule 404(b) is within the sound discretion of the trial court. A trial court's evidentiary rulings will not be reversed on appeal absent a clear showing of abuse of discretion.

In *Gomez*, the Seventh Circuit "set the roadmap" for determining the admissibility of other-act evidence. *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019). In *Gomez* and its progeny, the Court of Appeals explained that Rule 404(b) covers the entire process of using other-act evidence, and that process has four components:

(1) The Court must determine whether the evidence is relevant under Rules 401 and 402;

(2) The Court must then determine whether the evidence is categorically inadmissible under Rule 404(b);

(3) If not "foreclosed by Rule 404(b)," the Court must determine if the evidence should be excluded under Rule 403;

(4) Finally, if the evidence is admissible, a proper limiting instruction should be given to the jury about permissible and forbidden inferences.

*United States v. Lawson*, 776 F.3d 519, 522 (7th Cir. 2015).

Once the Court finds that the evidence is relevant pursuant to Rules 401 and 402 and that the purpose for which the evidence is being offered is permissible under

8

404(b), it must also find that the evidence is not substantially more unfairly prejudicial than probative under Rule 403, taking into account "the extent to which the non-propensity fact for which the evidence is offered is actually at issue in the case." *Brewer*, 915 F.3d at 415 (quoting *Gomez*, 763 F.3d at 860, and citing *Thomas*, 897 F.3d at 813).

There is an unavoidable, inherent risk of prejudice against the defendant every time a party seeks to admit evidence of other acts. Indeed, "[a]ll evidence offered by the prosecutor is prejudicial to the defendant; there would be no point in offering it if it were not." *United States v. Foster*, 939 F.2d 455, 457 (7th Cir. 1991). However, "excluding other-acts evidence on that basis would make it nearly impossible to ever admit such evidence." *United States v. Schmitt*, 770 F.3d 524, 535 (7th Cir. 2014) *cert. denied,* 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015). The court's determination is not *any* risk of prejudice, but whether the other acts pose an *unfair* risk of prejudice. "Evidence is unfairly prejudicial if it induces the jury to decide the case on an improper basis rather than on the evidence presented." *United States v. Haldar,* 751 F.3d 450, 458 (7th Cir. 2014) (quoting *United States v. Conner,* 583 F.3d 1011, 1025 (7th Cir. 2009)).

Rule 403 balancing also accounts for the importance of the Rule 404(b) evidence: "[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (internal quotation marks and citation omitted, alteration in original). Limiting

9

instructions can help address the risk of unfair prejudice. *See, e.g., United States v. Schmitt*, 770 F.3d 524, 535-36 (7th Cir. 2014).

### B. Admissibility of Scruff Chats Referencing Sexual Interests and Telegram

The proffered evidence is highly relevant under Rule 401 and admissible under Rule 404(b) to prove identity and intent. The thirty-five excerpts of Scruff chats referencing sexual interests and Telegram included within this motion are just a small sample of the hundreds of Scruff chats recovered from defendant's iPhone that mirror this pattern. These messages reflect the same modus operandi as the September 11, 2023 exchange between defendant and the New York Individual—namely, defendant connects with an individual on Scruff, asks what the individual is "into," and then suggests moving the conversation to Telegram. According to the Scruff chats found on defendant's iPhone, he discussed "tele" or "telegram" with other Scruff users over 800 times and repeatedly informed other users that he "only" or "just" uses Telegram rather than other applications, such as Sessions, Wickr, or Kik because Telegram is "better for vids", "safe" and "secure".[3]

The Seventh Circuit has repeatedly affirmed the admission of *modus operandi* evidence pursuant to Rule 404(b). *United States v. Price*, 516 F.3d 597, 604 (7th Cir. 2008); *United States v. McGuire*, 627 F.3d 622, 626–27 (7th Cir. 2010); *United States v. Powers*, 978 F.2d 354, 361-62 (7th Cir. 1992). In *Gomez*, the court noted that *modus operandi* evidence is admissible when "it 'bears a singular strong resemblance to the

---

[3] Defendant references "tele" being "better for vids" or "best for vids" on 13 separate occasions between June 28, 2023 and December 20, 2023.

10

pattern of the offense charged with the similarities between the two crimes 'sufficiently idiosyncratic to permit an inference of a pattern.'" 763 F. 3d at 854 (citing *United States v. Simpson*, 479 F.3d 492, 497-98 (7th Cir. 2007)).

Evidence that defendant referenced Telegram and its superiority to other applications for "vids" on various dates and times during conversations with other individuals on Scruff also makes it much more probable that defendant was the user of the @pervchidude Telegram account at the times the account user received and distributed child pornography videos on the application. This is especially so because while the Telegram application and its data was not found on defendant's iPhone, the Scruff application and its data *was*.

In addition to proving identity and that pattern of Scruff-to-Telegram messaging is defendant's modus operandi, these messages also establish defendant's intent to use Telegram, specifically, to communicate with individuals who have sexual interests similar to his own (such as being "open minded") and to exchange content depicting those interests using the Telegram application. Thus, the proffered evidence is also direct evidence of the obstruction charge because it explains why defendant deleted the Telegram application from his phone during the execution of a federal search warrant. *See United States v. McKibbins*, 656 F.3d 707, 711 (7th Cir. 2011) (upholding trial court's finding that "everything on [appellant's] computer was direct evidence of obstruction" because it demonstrated why appellant wanted to destroy the computer); *see also United States v. Thomas*, 986 F.3d 723, 728 (7th Cir. 2021) ("[D]irect evidence of a crime is almost always admissible against a defendant

11

and is not other act evidence.").

The proffered evidence is also admissible under Rule 403. The Seventh Circuit has repeatedly recognized the prejudice that the admission of other acts of child molestation necessarily poses to any defendant; yet the court has "regularly sustained the admission of such evidence when probative of a defendant's motive, intent, or other pertinent (and admissible) factor." *United States v. Roux*, 715 F.3d 1019, 1026 (7th Cir. 2013); *United States v. Chambers,* 642 F.3d 588, 595–96 (7th Cir. 2011).[4] Here, the jury will see images of child pornography that defendant distributed and received on Telegram. The proffered evidence—chats referencing defendant's sexual interests and use of Telegram—is is no more prejudicial than the nature and circumstances of the charged conduct. Therefore, the risk of unfair prejudice is minimal.

However, to further ameliorate the risk of prejudice, the court may provide the jury with a limiting instruction that may serve to "reduce the risk of unfair prejudice inherent in other-act evidence." *Gomez,* 763 F. 3d at 860.

---

[4] Although the proffered evidence is not explicitly evidence of other acts of child molestation, it could be seen as such. Indeed, the government asserts that the evidence is probative of defendant's intent to use Telegram to communicate with individuals who have sexual interests similar to his own (such as being "open minded", which evidence will establish is code to suggest an individual's interest in child pornography) and to exchange content depicting those interests using the Telegram application. Such evidence is further admissible under Rule 414, which permits evidence that the defendant committed any act of child molestation to be admitted in a case where the defendant is accused of child molestation for any purpose, including to establish defendant's propensity to commit sexual molestation offenses. *See United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996) (Rule 414 makes evidence of prior acts of child molestation admissible without regard to Rule 404(b)).

12

### C. Admissibility of Telegram Chats Referencing Defendant Having a Collection of Child Pornography on Telegram

Similar to the above argument, the proffered evidence is highly relevant under Rule 401 and admissible under Rule 404(b) to prove identity, knowledge, motive, and intent. In these chat messages, defendant repeatedly references his collection of child pornography videos and his preference to store those videos on the Telegram application over other applications, such as Mega and Kik. This evidence is probative to the jury's determination that defendant knowingly altered, destroyed, concealed, and covered up data and records pertaining to the use of the Telegram mobile telephone application and data and records related to the Telegram account bearing the public username @pervchidude, as charged in Count Four.

The proffered evidence is therefore direct evidence of the obstruction charge itself and not subject to Rule 404(b). *See McKibbins*, 656 F.3d at 711; *see also United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged.") (internal quotation omitted).

However, in addition to being direct evidence of the obstruction charge, the proffered evidence also explains defendant's motive for deleting the Telegram application and access to its cloud-based contents from his cellphone seconds before the FBI seized his phone. Furthermore, the evidence persuasively establishes that defendant acted with the requisite intent when he deleted the Telegram application from his phone. *See* S. Rep. No. 107-146, at 14 (2002) ("Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done

13

with the intent to obstruct, impede or influence"); *cf. McKibbins*, 656 F.3d at 711 ("Without a showing of a willful, corrupt *mens rea* that has a nexus to an official proceeding, the government cannot meet its burden [for an obstruction offense under section 1512(c)]); *see also Yates v. United States*, 574 U.S. 528, 542 (2015) (stating that there is a "significant overlap" between Sections 1512(c)(1) and 1519).

The proffered evidence is further admissible to prove defendant's motive and intent in distributing child pornography and further demonstrates defendant's ability to distribute child pornography to the New York Individual on September 11, 2023 and the Undercover FBI Agent on December 11, 2023. *See Chambers,* 642 F.3d at 595 (7th Cir. 2011) (The extensive supply of [uncharged] pornographic images of children on Chambers' computer makes that evidence probative as to Chambers' motive and intent. It demonstrates Chambers' ability to transport child pornography to Detective Smithberger and Special Agent Luders, as well as his sexual inclination towards children.").

Here, the evidence is not only direct evidence of a charged obstruction offense, but is also highly probative of knowledge, motive, and intent for the obstruction charge as well as the distribution of child pornography charges. Because the government must establish the defendant's knowledge and intent beyond a reasonable doubt, the probative value of the proffered evidence far outweighs the risk of unfair prejudice. Moreover, the proffered evidence—chats referencing defendant' possession of child pornography and preference for using Telegram to store his collection of child pornography—is no more prejudicial than the nature and

14

circumstances of the conduct charged in the indictment, particularly because in order to distribute child pornography, one must necessarily possess child pornography. Therefore, the risk of unfair prejudice is minimal.

However, to further ameliorate the risk of prejudice, the court may provide the jury with a case-specific limiting instruction that directs the jury, in plain language, to the specific purpose for which this evidence is offered.

### D. Admissibility of Telegram Chats Referencing Sexual Interest in Prepubescent Children

The proffered evidence is highly relevant to show defendant's knowledge and intent in receiving and distributing child pornography, which he is charged with doing in Counts One, Two, and Three of the Second Superseding Indictment. *See* PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT 916 (2023) (requiring that the defendant "knowingly" received/distributed the child pornography); *see also United States v. Knope*, 655 F.3d 647, 657 (7th Cir. 2011) ("The chats show that Knope had expressed interest in having sex with minors in the past," and were "relevant to establishing Knope's knowledge, intent, and lack of mistake.")

In the context of crimes involving sexual exploitation of minors, it is generally accepted in this Circuit and elsewhere, that evidence of a defendant's sexual attraction to children is probative of the intent element of criminal statutes involving sexual activity with minors. *See Roux*, 715 F.3d at 1025 (citing *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (evidence demonstrating "sexual interest in children…serve[s] as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children, including child pornography offenses");

15

*see also Chambers*, 642 F.3d 588 at 595 (7th Cir. 2011) (upholding admission of appellant's chats with an undercover FBI agent where appellant "spoke in sexually explicit language and boasted about having sex with a minor and finding such evidence relevant to establish defendant's sexual interest in children and motive to commit the charged offenses of enticement of a child and transportation of child pornography).

The evidence of defendant's own statements indicating a sexual preference for prepubescent children, as outlined above, are relevant and admissible under Rule 401, 402, 404(b), and 403. The proffered evidence is relevant to defendant's knowledge that the videos he was receiving and distributing depicted child pornography. Indeed, defendant made it very clear in his chats that he was interested in seeing children engaged in sexually explicit conduct. Defendant's statements of his sexual interest in children and the sexually explicit chats he exchanged with the New York Individual and the Undercover FBI Agent also demonstrate his motive in receiving and distributing child pornography. Indeed, if the individual on the other side of the chats with defendant responded negatively to defendant's numerous statements referencing his sexual interest in children, defendant almost certainly would not have distributed child pornography videos to them or solicited child pornography videos from them.

The proffered evidence is also admissible under Rule 403. While this evidence may be prejudicial, it is not unfairly prejudicial. *See Chambers*, 642 F.3d at 595. Moreover, the Seventh Circuit has routinely sustained the admission of similar

16

evidence when such evidence is probative of defendant's motive, intent, or other pertinent factor. *See e.g.*, *Roux*, 715 F.3d at 1026; *Chambers,* 642 F.3d at 595–96; *United States v. Zahursky*, 580 F.3d 515, 525 (7th Cir. 2009); *Sebolt*, 460 F.3d at 917. Here, the jury will see images of child pornography depicting prepubescent children that defendant distributed and received on Telegram. The proffered evidence—chats referencing defendant's sexual interest in prepubescent children—is no more prejudicial than the nature and circumstances of the charged conduct. Therefore, the risk of unfair prejudice is minimal.

However, to further ameliorate the risk of prejudice, the court may provide the jury with a limiting instruction. *See Zahursky*, 580 F.3d at 525–26 (finding that court's limiting instruction "removed any unfair prejudice from the admission of the Rule 404(b) evidence" where limiting instruction was provided both after the jury heard the Rule 404(b) evidence and again in final jury instructions); *see also United States v. Vargas,* 552 F.3d 550, 557 (7th Cir.2008) ("[W]e assume that limiting instructions are effective in reducing or eliminating unfair prejudice.").

## IV.  CONCLUSION

The law supports the admission of the proffered evidence under Rule 404(b).

WHEREFORE, the United States respectfully requests that this Court allow the admission of: (1) Scruff chats referencing sexual interests and Telegram; (2) Telegram chats referencing defendant having a collection of child pornography on Telegram; and (3) Telegram chats referencing defendant's sexual interest in prepubescent children.

17

Respectfully submitted,

ANDREW S. BOUTROS
UNITED STATES ATTORNEY


By: */s/ Asheeka Desai*
ASHEEKA DESAI
BRANDON D. STONE
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, IL 60604
(312) 353-5300