<div align="center">

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

</div>

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 24 CR 153 |
| v. | Judge LaShonda A. Hunt |
| ADAM STAFFORD KING, | |
| Defendant. | |

<div align="center">

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL MOTIONS**
***IN LIMINE* (DKT. 167)**

</div>

Now comes defendant Adam King, by and through counsel Bedi & Singer, LLP, and submits the following responses to the government's supplemental motions *in limine* filed on February 13, 2026. (Dkt. 167). Mr. King raises objections to both motions argued in the government's supplemental motion *in limine*, and respectfully requests this Honorable Court deny the government's supplemental motion.

1. **THE DEFENSE OBJECTS TO THE GOVERNMENT'S MOTION TO BAR CROSS-EXAMINATION OF WITNESSES, AS THEIR REQUEST WOULD BAR THE DEFENSE FROM EFFECTIVE CROSS-EXAMINATION**

The government seeks to bar Mr. King from cross-examining two separate witnesses on topics that are ripe for cross-examination and central to the case. This attempt to limit the accused's fundamental constitutional right to defend himself against a core element of the charges must be denied. This request is not merely unwarranted; it is an assault on due process that must be rejected outright.

It is a bedrock principle of the criminal justice system that "the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The Supreme Court has declared "[t]he right to the effective

<div align="right">1</div>

assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 656 (1984). The government is seeking to bar Mr. King from presenting a defense to his case by prohibiting specific cross-examination of two key government witnesses. This would deny Mr. King his constitutional right to defend his case. This supplemental motion by the government should unquestionably be denied.

### a. Cross-examination of Austermann should not be limited

The government requests in their motion *in limine* that the defense be barred from cross-examining Austermann on a number of topics, including (1) "lawful sexual interests, experiences and sexual health" (2) his "involvement in other illegal activities" and (3) the "specific statutory penalties or mandatory minimum sentences associated with Austermann's charges." The defense has no intention of cross-examining Austermann on any irrelevant "lawful sexual interests, experiences, and sexual health." Yet many of Austermann's "lawful" conversations mention or begin to discuss his interest in minors. The defense should therefore not be barred from cross-examining Austermann on "other illegal activity," as will be further explained below. Thus, the defense does not object to the government's request as it entails "consensual activity with adult men, past and future sexual encounters" but if any "lawful" sexual activity involves discussion of interest in minors, the defense respectfully requests the court not limit its cross-examination on this pertinent and relevant issue.

### i. Cross-examination on Austermann's "other illegal activities" should not be limited

The government argues that the defense should be barred from cross-examining Austermann regarding the details of his child pornography crimes, including the text messages Austermann sent to others about these crimes. The government states the details are

inadmissible, and the text messages themselves are irrelevant, unduly prejudicial, cumulative, hearsay, and "violate the prohibition on extrinsic evidence." (Dkt. 167 at 9). First, this motion *in limine* is premature. Seeking to bar Mr. King from cross-examination on such a broad topic of Austermann's "other illegal activities" would unduly limit Mr. King from cross-examining this witness on issues that may become relevant as the trial unfolds. For example, if the government is seeking to have this witness explain certain terms relating to the illegal activities at issue in this case, the defense then is allowed to further cross-examine the witness on his knowledge of these terms and his involvement in this type of activity. This could then include details of other allegations against him, charged or uncharged.

Additionally, the details of these crimes are relevant and are not unduly prejudicial. The details are relevant to show Austermann's own bias and motive for his testimony. The details are not unduly prejudicial. A piece of "[e]vidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *United States v. Loughry*, 660 F.3d 965, 974 (7th Cir. 2011). The evidence of Austermann's crimes will not sway the jury to act irrationally in weighing the evidence of the case. The details of these crimes will give the jury a full picture of this witness and his biases and motivations, a completely ripe area for cross-examination. Any prejudice to Austermann is not outweighed by the probative value of the cross-examination.

### ii. Cross-examination on "specific statutory penalties or mandatory minimums" should not be limited

The government argues any cross-examination on "the specific statutory penalties and mandatory minimum sentences associated with Austermann's pending charges" should be barred, as it is "unnecessary to address credibility and presents a substantial risk of unfair prejudice." (Dkt. 167 at 9).

First, two cases the government cites regarding penalties not disclosed to the jury refer to the jury not being informed of the possible sentences for a defendant, not a witness. *Shannon v. United States*, 512 U.S. 573 (1994) (where the defense argued the jury should have been informed of the consequences of a not guilty by reason of insanity verdict, the court mentioned that "as a general matter jurors are not informed of mandatory minimum or maximum sentences."); *United States v. Lewis*, 110 F.3d 417 (7th Cir. 1997) (where defense argued that the "district court erred by refusing his pretrial request to advise the jury about the sentencing consequences of a guilty verdict"). The government has already argued in Dkt. 85 that the defense should be barred from discussing possible penalties faced by Mr. King, and the defense has responded with a non-objection. (Dkt. 94 at 13). But cross-examining a witness on the possible penalties he is facing for his crimes is an area ripe for impeachment. Just because Austermann is charged with similar crimes to Mr. King, this does not inherently mean Mr. King is subject to the same mandatory minimum, nor would the jury know this from questioning Austermann. The government seeks to curtail Mr. King's ability to cross-examine a witness in his case based solely on the government's theory the jury could speculate to Mr. King's possible sentence. There is no blanket rule prohibiting testimony on potential maximum sentences of a cooperating witness. *United States v. Messino*, 873 F.Supp. 1177, 1182 (N.D. Ill. 1995) (allowing introduction of statutory maximums faced by witness as relevant to the issue of credibility); *United States v. Maciel*, 2012 WL 13196094, *1 (N.D. Ill. Feb. 2, 2012) (allowing defense to cross-examine any government witness or cooperator on potential penalties they may face). Any concern the government has can be cured by the exact jury instruction the government discusses in their supplemental motion and original motion *in limine*. (Dkt. 85, Dkt. 167 at 10).

The government also argues cross-examination on mandatory minimums and statutory

maximums would "risk confusing the issues and diverting the jury from its fact finding role." (Dkt. 167 at 10). Questioning Austermann as to his mandatory minimums and statutory maximums would not confuse the issues. Any cross-examination on this topic would be included in the defense's line of questioning that the government has already conceded is completely relevant and ripe for cross-examination, Austermann's benefit in exchange for his cooperation. (Dkt. 167 at 8). Additional questioning on an already admissible topic would not confuse the issues. It also would not divert the jury from its fact-finding role. One purpose of a jury is to determine the credibility of the witnesses. Therefore, when cross-examination touches on the credibility of a witness, this goes directly to the fact-finding role of the jury. It does not "divert" the jury from its purpose, it is, in fact, part of the jury's purpose. This Court should deny the government's request to curtail Mr. King's ability to present a defense significantly.

The government's motion reveals more about the government's anxiety over cross-examination than it does about any legitimate evidentiary concern. Austermann will face a thorough cross-examination that is the defendant's constitutional right, and no motion *in limine* will curtail it. If the government is genuinely concerned about the questions counsel intends to ask, the remedy is simple, do not call Austermann as a witness.

### b. Cross-examination of the OCE should not be limited

The government previously filed a motion, dkt. 120, to preclude any cross-examination of who they call the "OCE," an FBI agent who was involved in many aspects of the investigation in this case, including the investigation into Austermann. The government sought to limit cross-examination related to what was then an investigation into potential mishandling of evidence by the OCE and other members of their "squad." (Dkt. 167 at 12). The government argued in its original filing that cross-examination should be limited under Fed. R. Evid. 608(b), 402, 403. The government argued it was irrelevant because at the time it was only an

investigation, (Dkt. 120 at 6), it does not go to the agent's credibility or bias, is inadmissible under 608(b) (Dkt. 120 at 6), and the probative value of such questioning is substantially outweighed by the danger of unfair prejudice, confusing the issues, and needlessly embarrassing the witness. (Dkt. 120 at 7).

The defense filed a lengthy response in Dkt. 132, arguing cross examination of the agent regarding the investigation is proper cross-examination, as it is not a violation of Fed. R. Evid. 608, is admissible under Rule 607, is highly relevant, and would not confuse the jury or unduly prejudice the OCE. (Dkt. 132 at 7-17).

At the final pretrial conferences held on April 29, 2025, and May 2, 2025, the court discussed the government's motion to limit cross-examination and orally explained that cross-examination of the OCE on this topic cannot be limited.

The government, in February 2026, then filed its supplemental motion *in limine*, which seems to renew its motion to limit cross that was previously denied. As the government explains in its supplemental motion *in limine*, the investigation into the OCE has "since been adjudicated." (Dkt. 167 at 12). The investigation found "the OCE failed to properly store master copies of extracted data from digital evidence in an Evidence Control Facility. As a result, the OCE was suspended without pay for five days." (Dkt. 167 at 12). The government now states they are withdrawing the portion of dkt. 120 relating to the cross-examination of the OCE and replacing it with their supplemental motion *in limine*. (Dkt. 167 at 12). The defense continues to object to any limitation of cross-examination of the OCE.

First, the Court has already decided this issue and ruled against the government. The government's motion is an improper attempt to relitigate a settled issue. The government is seeking what amounts to a motion to reconsider on a motion *in limine* that the court has already

6

ruled on. While motions to reconsider are allowed in criminal cases, "courts typically apply the established standard applicable in civil cases. In civil litigation, a motion for reconsideration serves a very limited purpose; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence."" *United States v. Boarden*, 29 F.Supp.3d 1164, 1171-1172 (E.D. Wis. 2014). This Court's original ruling was not a manifest error of law, nor does the government argue it is. While the circumstances of this investigation into the OCE have changed, it is not "new" evidence. The circumstances have changed to make cross-examination of the OCE even more relevant. While the government previously argued the investigation was irrelevant since it was not adjudicated, this argument no longer holds water. The OCE was, in fact, found to have failed to properly store evidence and was suspended without pay for these actions. This failure to properly store evidence is ripe for cross-examination, and in fact has already been deemed so by this court. The government's motion should be denied on this basis outright.

If the court does not deny the government's motion as a thinly-veiled improper motion to reconsider, the defense incorporates each of their previous arguments contained in the defense's filed response to Dkt. 120, Dkt. 132. The government's arguments contained in their supplemental motion *in limine* mirror much of the same argument they put forth in Dkt. 120. In their original filing, the government argued cross-examination of the OCE had no bearing on the OCE's truthfulness or bias, and that cross-examination on this topic would "lead to juror confusion and witness embarrassment" in violation of Fed. R. Evid. 403 and 611. In the government's new supplemental motion, they continue to argue any cross-examination on this topic is irrelevant, not probative of truthfulness, bias, or motive, and that it is more prejudicial than probative and would risk juror confusion under 403. Therefore, the defense's responses in

7

Dkt. 132 are still applicable, and are incorporated into this response.

Additionally, now the government argues this line of cross-examination should be barred because "the OCE's credibility is not genuinely in dispute." (Dkt. 167 at 15). The government argues that because the "defendant's purported defense is that his identity was stolen" the actions taken by the OCE in investigating the case are therefore not called into question by the defense. The government argues that because the "defendant does not deny" what the OCE investigated or discovered, this means the credibility of the OCE is not at issue. This argument and reasoning are illogical. Just because the defense does not dispute that this OCE was involved in the investigation, does not make his credibility a non-issue. The fact that the OCE was involved in this investigation and has now been found to have improperly stored evidence goes directly to the OCE's credibility, as it goes directly to the OCE's investigatory techniques, abilities, and procedures. How the OCE investigated this case is obviously relevant and a topic ripe for cross-examination. Mr. King has a right to raise doubt in the jurors' minds by challenging the government's evidence, or lack thereof. Preventing Mr. King from cross-examining the OCE on his investigation and previous conduct related to the investigation is a fundamental violation of that right. The government is seeking to prohibit Mr. King from presenting a full defense. The court must deny the government's motion.

### 2. THE DEFENSE OBJECTS TO THE GOVERNMENT'S MOTION TO ADMIT TELEGRAM RECORDS UNDER FRE 807

The government argues that an email response to their subpoena from the company Telegram satisfies the requirements in Fed. R. Evid 807, the residual hearsay exception, and should therefore be admitted. The government has been unable to secure the necessary business records certification to reflect the reliability of this document under Fed. R. Evid. 902(11) and 803(6), and is therefore resorting to admit this evidence under a hearsay exception that courts

have consistently stated must be "used only rarely, in truly exceptional cases." *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005); *United States v. Moore*, 824 F.3d 620, 624 (7th Cir. 2016) ("We have warned against the liberal admission of evidence under Rule 807."). The government's evidence does not meet the requirements under Fed. R. Evid. 807 and must be barred from entry at trial.

First, the government is seeking to use this residual exception, whose purpose is to admit reliable hearsay not covered by any other hearsay rule, to circumvent the requirements under 902(11) and 803(6). The requirements in 902(11) and 803(6) were not arbitrarily put in place without reason. If there is no certification that these records were actual business records, the reliability standards in these rules are not met. The government cannot use a rule intended to be for exceptionally reliable circumstances, simply when they fail to obtain a business records certification. This would force 807 to become "the exception that swallows the hearsay rule." *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998). If this hearsay email is admitted, then in every case where the government fails to obtain a business records certification, every business record could be admitted under 807.

The government argues the Telegram email meets the requirements of Fed. R. Evid. 807, yet, this Telegram email is not supported by sufficient guarantees of trustworthiness, it is not more probative than any reasonable obtainable alternative, and is violative of the Confrontation Clause. It therefore does not meet the requirements of admissibility under Fed. R. Evid. 807.

   a. **The Telegram email is not supported by sufficient guarantees of trustworthiness**

In the context of Fed. R. Evid. 807, courts have looked at a number of factors to determine if the hearsay is supported by sufficient guarantees of trustworthiness. These factors include but are not limited to "the character of the witness for truthfulness and honesty, and the

availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify before the grand jury; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability." *United States v. Moore*, 824 F.3d 620, 622-623 (7th Cir. 2016). The government only argues that these Telegram records are trustworthy because they were sent by Telegram's "official law enforcement email address," include "technical data Telegram collections and has no incentive to fabricate," and the records are "strongly corroborated by independent evidence." (Dkt. 167 at 18). None of these arguments reflects that the information supplied by Telegram is trustworthy enough for admission under Fed. R. Evid. 807.

First, the email itself reflects that the content is unreliable and untrustworthy. After the signature line, the email contains a "Legal statement" wherein it says that Telegram is "not representing that this is a full and complete response to the requests you have made." (Dkt. 167-2 at 1). This statement in itself reflects that the information contained is unreliable. If this is not a full and complete response to the FBI's request, how can it be trustworthy or reliable? There could be other data generated by Telegram that contradicts this return, is different from this return, or adds additional context to this return. If this return is not complete, there is no trustworthiness in this response, and it is not reliable enough to be admitted into evidence under Fed. R. Evid 807 as an "exceptional" circumstance of reliability.

The government argues the Telegram email is reliable because it was sent to the government in response to a subpoena from Telegram's "official law enforcement email address." This alone does not reflect that the email is reliable. The company simply having a

business email address which responds to law enforcement inquiries means nothing to the content of the responses themselves. In fact, the email response is not signed by a specific individual at all, only by "The Telegram Team." (Dkt. 167-2 at 1). There are no individual employees of Telegram cc'ed on the email. There is no indication of how this response was generated or how this information was obtained. The government attached a number of pages from telegram.org explaining the company's privacy policies and other "Frequently Asked Questions," but there is no indication from the email response that any of these policies or practices were followed when the data it provided in response to the subpoena was collected. The simple fact an email was sent from a domain within the company Telegram does not reflect the content within is reliable or trustworthy whatsoever.

This lack of a declarant also makes this email inadmissible under Fed. R. Evid. 901. To satisfy the requirements of Fed. R. Evid. 901, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Without an individual declarant of this statement in the email, there is no way the government can authenticate that the email is actually what they purport it to be. Neither the defense nor the court can verify in any way how the information was generated. The email is "signed" by a faceless company which contests United States jurisdiction over it. This email and the government's arguments simply do not meet the requirements of Fed. R. Evid. 901, much less the requirements of Fed. R. Evid. 807.

The government also argues that the email is reliable because it contains "technical data that Telegram routinely collects and has no incentive to fabricate, including IP address, last login time, and phone number." (Dkt. 167 at 18). Just because it is characterized as "technical data" does not mean it is trustworthy. As discussed above, there is no indication of how this information was obtained by Telegram. Was it pulled from their system by an individual person?

11

Was it auto-generated from a computer code? How was the information stored? How is this information generated? How was this specific information "routinely collected?" Again, there is no evidence that any specific policy for the collection, storage, or generation of a user's data was followed in providing the information contained in the email, and no individual person, employee, or supervisor certified anything about the accuracy of this information.

The government argues that this email is corroborated by independent evidence. The Advisory Committee Note to Fed. R. Evid. 807 explains "that the existence or absence of corroboration is relevant to, but not dispositive of, whether a statement should be admissible under this exception. Of course, the court must consider not only the existence of corroborating evidence but also the strength and quality of that evidence." Fed. R. Evid. 807, Advisory Committee Notes, 2019 Amendments. The government argues this corroborating independent evidence is the allegation of the deletion of the Telegram app from a device, and "the defendant's Scruff messages … revealed that the defendant identified his Telegram username." (Dkt. 167 at 18). The strength and quality of these corroborating allegations is low. An alleged deletion of the Telegram application, and reciting a Telegram username does not corroborate the information contained in the Telegram email. The corroborating information is weak, and under all of the circumstances surrounding the government's arguments and the allegations, not strong enough to admit this Telegram email under 807.

Additionally, one factor the court can consider includes "the character of the witness for truthfulness and honesty." The email purporting to contain Telegram's subscriber records is signed only by "The Telegram Team." No individual is identified. No employee is named. No supervisor certified the response. No custodian attested to the accuracy of the data. The email was copied to no one. It was generated by an anonymous, faceless corporate entity which also

disclaimed that its response was full or complete. There is simply no human being whose truthfulness and honesty this Court can evaluate. Another factor, "whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury," weighs in favor of exclusion. This response was not given under oath, subject to cross-examination, or made under penalty of perjury. This reflects unreliability, as there are no consequences for Telegram if the information provided is even slightly incorrect, misleading, or mistaken. This weighs in favor of the exclusion of this evidence under Fed. R. Evid. 807.

The government cites a number of cases where documents were admitted under this exception, arguing the Telegram records are similar to these examples. Yet this is not the case. Each of the three examples the government gives are documents that themselves have magnitudes greater reliability than the Telegram email. The government cites *Moore*, wherein the government sought to introduce an individual's supervised release reports and notes taken by the individual's probation officer while they were on federal probation. *United States v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016). In *Dumeisi*, the documents at issue were contained in a foreign intelligence file. *United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005). In *Banks*, the court found an ATF purchase form admissible in 807, in part because the record-keeping practice of these forms was "mandated by law." *United States v. Banks,* 514 F.3d 769, 778 (8th Cir. 2008). In each of these instances, the document had indicia of reliability above and beyond the Telegram email. In *Moore*, the individual submitting information to the probation office regarding his supervised release had an incentive to tell the truth, and in the case of *Banks*, the business had a duty to keep accurate forms. None of those safety nets for accuracy is present here. Telegram alleges they are not even subject to the laws of the United States. They have no duty to accurately report the information contained in this email. There is no individual who is

13

responsible for this data. There is no way this data is reliable unlike the data in the examples the government gives. The totality of the circumstances surrounding this email reflect that it is unreliable hearsay and does not meet the standards set out in Fed. R. Evid. 807.

### b. The Telegram email is not more probative than any other alternatives

The government argues that because they have no Telegram data from the cell phone, this Telegram return is necessary to show Mr. King's alleged control of the Telegram account at issue. First, this is just one factor the court can consider in admitting evidence under 807. The government has detailed the corroborating evidence they will present to allege Mr. King was the user of this account. (Dkt. 167 at 18). This includes Scruff messages discussing the username and the allegation that Telegram was previously installed on Mr. King's phone. While the government argues this Telegram return is the most probative evidence available, the evidence they have already indicated they will present is just as probative, reflecting that this Telegram email is not "more probative than any reasonably obtainable alternative." Prohibiting this unreliable hearsay from Telegram does not prohibit the government from presenting other evidence in their case-in-chief. Prohibiting this unreliable hearsay from admission into evidence under Fed. R. Evid. 807 upholds the Rules of Evidence and the Rule Against Hearsay.

### c. Telegram email is inadmissible under the Confrontation Clause

The government argues that admission of this evidence would not implicate the Confrontation Clause because the Telegram email is not testimonial. A statement is testimonial if its primary purpose is to establish or prove past events for use in a criminal prosecution. *United States v. Norwood*, 982 F.3d 1032, 1043 (7th Cir. 2020). The Confrontation Clause applies only to testimonial evidence and "prohibits the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *United States v. Wehrle*, 985 F.3d 549, 556 (7th Cir. 2021)

14

(internal citations omitted).

While the government cites *Melendez-Diaz* to argue that business records are not testimonial, this general rule does not apply to all business records, and this rule does not apply to the Telegram "business records" in Mr. King's case. *Melendez-Diaz v. Massachusetts*, 577 U.S. 305, 324 (2009). The court in *Melendez* explained "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id*. at 324. This guarantee that the records were created in "administration of the entity's affairs" and not for trial is completely non-existent in the Telegram email. There is absolutely no reliable evidence that this Telegram email and the information contained therein was collected as part of Telegram's routine business activity. The government attaches Telegram's Terms of Service and FAQs found on their website for proof that this data was collected in the ordinary course of business and, therefore, non-testimonial. Yet, as argued above, there is no indication, certification, or discussion that any of these policies were followed when collecting the data and information contained in the email.

The government cannot prove the information in the email was collected in the regular course of business. There is no actual certification that these records were made, kept, or generated in the ordinary course of business, and therefore, the underpinning of the general rule that business records are non-testimonial cannot be met. Therefore, since this evidence is testimonial, and there is no individual the government is calling at trial, it must not be admitted under the Confrontation Clause.

**WHEREFORE,** Mr. King respectfully requests that the Court deny the Government's

15

supplemental motions *in limine* based on the above objections.

<div style="margin-left: 50%;">

Respectfully submitted,

s/ Jonathan S. Bedi
Jonathan S. Bedi
Dena M. Singer
Emily Komp
Bedi & Singer, LLP
53 West Jackson Blvd., Suite 1101
Chicago, IL 60604
(312) 525 2017
dsinger@bedisinger.com
jbedi@bedisinger.com
ekomp@bedisinger.com
**Attorney for Defendant**

</div>

## CERTIFICATE OF SERVICE

I, Jonathan S. Bedi, hereby certify that I caused a copy of the foregoing to be electronically filed with the CM/ECF system.

s/ Jonathan S. Bedi
Jonathan S. Bedi