UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 24 CR 153 |
| | Hon. Lashonda A. Hunt |
| ADAM STAFFORD KING | |

**GOVERNMENT'S SUPPLEMENTAL MATERIALS IN SUPPORT OF ITS
MOTION TO ADMIT TELEGRAM RECORDS UNDER FRE 807**

The United States of America, by its attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, respectfully submits the following supplemental materials in support of its Motion to Admit Telegram Records Under FRE 807 (Dkt. 167), and states as follows:

**A. Background**

On February 13, 2026, the government filed supplemental motions in limine, including a motion to admit Telegram records under FRE 807. Dkt. 167. The government argued that the evidence, namely, a document that Telegram produced in response to a grand jury subpoena, is admissible under Rule 807 because it: (1) is supported by "sufficient guarantees of trustworthiness," (2) is more probative on the point for which it is offered than other reasonably obtainable evidence; and (3) is disclosed with adequate pretrial notice. Fed. R. Evid. 807; *see also United States v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016) (citation omitted).

On March 6, 2026, defendant filed a response to the government's supplemental motions in limine, in which he argued that the Telegram evidence is not supported by

1

sufficient guarantees of trustworthiness, is not more probative than any reasonably obtainable alternative, and is violative of the Confrontation Clause. Dkt. 171.

On March 12, 2026, the Court held oral argument on the parties' pretrial motions. After argument on the government's motion to admit Telegram records under FRE 807, the Court posed several questions about the Telegram records and gave the government leave to submit supplemental materials in support of its motion. To the government's understanding, the Court specifically asked the government to submit a sworn affidavit from the FBI detailing the procedure by which FBI subpoenaed Telegram in this case and received records. The Court also asked the government to provide more information establishing that the Telegram records are what the government claims they are, *i.e.,* legitimate records from Telegram concerning a Telegram user account.

The government now submits the following supplemental materials in support of its motion to admit Telegram records under FRE 807:

- Ex. A: Affidavit of Special Agent Michael C. Devine

- Ex. B: Affidavit of Special Agent Jessical L. Stone

- Ex. C: Affidavit of Special Agent Gennady L. Julien

- Ex. D: Letter from Telegram Attorney Nina Goodman to AUSA Ann Marie Ursini, dated March 16, 2026

- Ex. E: Email from Telegram Attorney Nina Goodman to AUSA Asheeka Desai, dated March 26, 2026

- Ex. F: Guidance on Submitting Data Requests to Telegram, provided by Telegram Attorney Nina Goodman to AUSA Asheeka Desai via email on March 26, 2026

### B.     Argument

Exhibits A through F, attached hereto, further establish the reliability, authenticity, and trustworthiness of the Telegram records at issue in this case. As demonstrated in Special Agent Michael C. Devine's affidavit (Ex. A), on or about October 1, 2024, the FBI served Telegram with a subpoena via its law enforcement email, content-referral-u1@telegram.org, seeking basic subscriber information for the Telegram account @pervchidude. Ex. A ¶ 4. Special Agent Devine used this email because, based on information received from other law enforcement personnel, he knew that in late 2024, Telegram accepted and responded to legal process submitted to this address. Id. ¶ 5. Telegram responded approximately two weeks later via email on or about October 18, 2024, providing records that included the @pervchidude account's user number, handle/username, account name, associated phone number, IP address, and date and time of the account's last login. *Id*. ¶ 6. Telegram's response is the subject of the government's motion *in limine* filed at Docket 167.

Special Agent Devine is personally aware of multiple other instances (at least 11) in which Telegram responded to subpoenas sent to this same email address in the same format, with the same limited information, same signature, and same legal statement, confirming that this is a reliable and routine method of record production by Telegram. Ex. A ¶ 11. Independent corroboration of this process is provided by Special Agent Jessica L. Stone, who similarly received responsive Telegram records in a different case/investigation  from content-referral-u1@telegram.org with the same limited information, in the same email format, including the signature "The Telegram Team," and with the same legal statement at the end. Ex. B ¶ 2; *see also* Ex. C, Affidavit

of Special Agent Gennady L. Julien, Ex. 1 (email from content-referral-u1@telegram.org, signed by "The Telegram Team," with legal statement at the end). This repeated consistency in form demonstrates that Telegram routinely produces records in email format with limited subscriber information in response to law enforcement requests, thereby strengthening the reliability and trustworthiness of such records.

Defendant asserts that the records are untrustworthy, and therefore inadmissible, because Telegram's legal statement disclaims completeness. Dkt. 171 at 9–10. But as the Seventh Circuit has held, the fact that records *might* be incomplete does not make them untrustworthy and therefore inadmissible; instead, this argument properly goes to the weight of the evidence. *See United States v. Kepligner*, 776 F.2d 678, 694 (7th Cir. 1985) ("Generally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence.").

The trustworthiness of the records is further reinforced by the reliability of the content-referral-u1@telegram.org email address as Telegram's official law enforcement contact in the United States. As noted in Exhibit A, on or about January 26, 2026, Special Agent Stephanie Ruemker emailed Telegram to request completion of a Certificate of Authenticity for the Telegram records at issue in this case. Ex. A ¶ 8. Special Agent Ruemker sent the request to three email addresses: content-referral-u1@telegram.org; dsa.telegram@edsr.eu (listed publicly on Telegram's website for European authorities); and la-content-referral-dsa@telegram.org. *Id*. ¶¶ 8–10. The following day, Telegram responded via email from dsa.telegram@edsr.eu

4

acknowledging receipt of Special Agent Ruemker's request and directing her to "only send future requests to content-referral-u1@telegram.org." *Id.* ¶ 9.

Special Agent Ruemker's experience being redirected to the content-referral-u1@telegram.org email address is not unique to her or others agents at FBI Chicago. As noted in Exhibit C, Special Agent Gennady Julien of FBI Miami had a similar experience. On January 7, 2026, Special Agent Julien attempted to serve a subpoena on Telegram using Telegram's public email address for issues involving illegal content, abuse@telegram.org. Ex. C ¶ 4. On January 29, 2026, Telegram replied to Special Agent Gennady's inquiry from content-referral-u1@telegram.org, stating that the email address "is Telegram's non-public contact point for requests made by law enforcement or judicial authorities in the United States." *Id.* ¶ 5.

Furthermore, an attorney identifying herself as counsel for Telegram recently confirmed in writing to the U.S. Attorney's Office for the Northern District of Illinois that "Telegram maintains an email address content-referral-u1@telegram.org, which is Telegram's non-public contact point for voluntary disclosure requests from law enforcement or judicial authorities in the United States, through which Telegram cooperates with relevant entities on a daily basis." Ex. D, Letter from Telegram Attorney Nina Goodman to AUSA Ann Marie Ursini, dated March 16, 2026; *see also* Ex. E, Email from Telegram Attorney Nina Goodman to AUSA Asheeka Desai, dated March 26, 2026; Ex. F, Guidance on Submitting Data Requests to Telegram, provided by Telegram Attorney Nina Goodman to AUSA Asheeka Desai via email on

March 26, 2026.[1] These examples demonstrate that the records produced from Telegram via the email address content-referral-u1@telegram.org are authentic, official Telegram records produced in response to valid legal process.

Defendant argues that Telegram's records are not trustworthy because there is no evidence showing whether the information was "auto-generated from a computer code," how "the information [was] stored," and how "this information [is] generated," among other things. Dkt. 171 at 11-12. However, such information does not exist in a routine business records certification under FRE 803(6), nor does FRE 803(6) require such information. The absence of this information does not render records inadmissible. Telegram's Privacy Policy explicitly states that Telegram collects metadata, including IP addresses and username history, [t]o improve the security of [user] account[s], as well as to prevent spam, abuse, and other violations of [Telegram's] Terms of Service." Dkt. 167, Ex. C at 6. In addition, Telegram's Frequently Asked Questions page states that "[i]f Telegram receives a valid order from the relevant judicial authorities[,]…[Telegram] may disclose [a user's] IP address and phone number to the relevant authorities." Dkt. 167, Ex. D at 9. This is precisely the information that was disclosed by Telegram to Special Agent Devine and other law enforcement personnel at FBI Chicago and FBI Miami. *See* Ex. A; Ex. B. Notably, defendant does not dispute that this information is technical data Telegram routinely collects and has no incentive to fabricate.

---

[1] In her March 26, 2026 email to AUSA Desai, Telegram Attorney Goodman included a pdf attachment titled "USA Template." The attachment is attached hereto as Exhibit F.

The lack of a motive to fabricate records or lie is a factor that the Court can properly consider when assessing the trustworthiness of the records. *See United States v. Moore*, 824 F.3d 620, 623 (7th Cir. 2016) (admitting under Rule 807 statement made by deceased probationer to probation officer regarding probationer's phone number, which probation officer recorded in supervision report, and noting that "the most important factor" was the probationer's "motivation—or lack thereof—to lie about his phone number"); *United States v. Vidrio-Osuna*, 198 F. App'x 582, 583, 2006 WL 1765764, at *1 (9th Cir. 2006) (affirming admission of birth certificate under FRE 807, in part, because the records contained information "about which it would be difficult to conceive of any motive to lie and thus contained sufficient indicia of trustworthiness"). *Cf. United States v. Burge*, 711 F.3d 803, 815 (7th Cir. 2013) (affirming exclusion of hearsay testimony offered under Rule 807 where the out-of-court declarants had a motive to lie).

Another factor the court must consider under Rule 807 is whether the Telegram records are corroborated by independent evidence. *See* Fed. R. Evid. 807 advisory committee's note to 2019 amendment ("[T]he focus for trustworthiness is on circumstantial guarantees surrounding the making of the statement itself, as well as any independent evidence corroborating the statement."). In this case, the corroboration is very strong. The Telegram records contain an account username ("pervchidude") that defendant identified as his Telegram username on 68 different occasions in Scruff chats recovered from defendant's phone, which federal agents seized from defendant pursuant to a court-authorized warrant. The Telegram records also contain a date and time of last login approximately eight hours before federal

7

agents executed that search warrant from an IP address assigned to defendant's residence. A forensic extraction of defendant's phone showed that the Telegram application was deleted mere seconds before the FBI seized defendant's cellphone from defendant. The Telegram records further contain a phone number that traced to one of defendant's former co-workers, who reported that defendant frequently used her cellphone at work and is expected to testify at trial about that. Together, these facts corroborate that the Telegram records show that the @pervchidude Telegram account was accessed from defendant's residence shortly before defendant obstructed justice by deleting the Telegram application from his cellphone.

Because defendant's obstruction deprived the government from being able to otherwise connect the @pervchidude Telegram account to defendant's cellphone and/or defendant's residence, the government now moves to admit these records under Rule 807. Defendant should not be rewarded for his obstructive misconduct with the exclusion of trustworthy, corroborated evidence that is highly probative of his access to and use of the specific account that he is charged with using to distribute and receive child pornography and later deleting as federal agents were executing a warrant at his residence.

The Telegram records were produced from a reliable, official Telegram law enforcement email, are consistent in form with other Telegram law enforcement responses, are corroborated by other independent evidence, and contain routine,

technical metadata collected by Telegram with no motive to fabricate. Accordingly, these records satisfy FRE 807's requirements and should be admitted.

Respectfully submitted,

ANDREW S. BOUTROS
UNITED STATES ATTORNEY

By:     */s/ Asheeka Desai*
ASHEEKA DESAI
PRASHANT KOLLURI
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, IL 60604
(312) 353-5300

9