IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America | |
| v. | No. 24 CR 153<br>Judge LaShonda A. Hunt |
| Adam King | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL MATERIALS IN SUPPORT OF ITS MOTION TO ADMIT TELEGRAM RECORDS UNDER FRE 807**

Adam King, by and through his counsel, Bedi & Singer, LLP, responds to the government's supplemental materials and arguments regarding the Telegram records it seeks to offer under Federal Rule of Evidence 807. (Dkt. 178.)

The government's supplemental materials do not fix the admissibility and constitutional deficiencies presented by the Telegram records. In particular, the records lack sufficient circumstantial indicia of trustworthiness to justify admission under Rule 807's residual exception. They also constitute testimonial evidence that triggers the Confrontation Clause and may not be admitted because Defendant has no opportunity to challenge the evidence via cross-examination. The email Telegram purportedly sent the FBI represented that Telegram used special methods to generate evidence for the FBI's investigation while refusing to certify that the evidence is reliable, otherwise explain how or by whom it was generated, or offer any witness on those issues. The government offers only conjecture that the information is residually reliable because it came from an email address affiliated with Telegram and Telegram collects some user information. But it does not resolve

1

the Court's concerns expressed at its March 12, 2026 hearing or adequately show the reliability of the specific testimonial evidence here, which an unidentified "Telegram Team" summarily claimed to have somehow specially obtained to help the FBI. (*See* Tr. of Mar. 12, 2026 Hr'g, Ex. A at 36:20–37:7 ("what is the process when you request these records . . . ? What is the chain of custody? Like, is there some office somewhere, somebody who would make these requests? Is this a standard request? Do they typically respond? . . . really, all you have is an email and some documents that came from that email account, and we're just assuming that these are accurate records.").) The evidence here lacks the guarantees of trustworthiness required under Rule 807 and admitting it would violate the Confrontation Clause. The Telegram records therefore should be excluded.

### I. The government's supplemental materials lack sufficient guarantees of trustworthiness under Rule 807

The government has failed to establish the reliability and trustworthiness of the disputed Telegram records to allow admission under Rule 807's residual exception. "A proponent of hearsay evidence must establish five elements in order to satisfy Rule 807: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice.[1] *United States v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016) (internal quotation marks and citation omitted). Nonexhaustive factors for assessing the trustworthiness of the evidence include the witness's character for truthfulness, whether the evidence was given

---

[1] Defendant incorporates its prior arguments on the Rule 807 elements, including that the Telegram email at issue is not more probative than alternative evidence. (Dkt. 171.)

2

under oath and subject to cross-examination, the existence of corroborating evidence, and the reasons for the witness's unavailability. *Id.* at 622–23. Rule 807's residual exception is used "very rarely, and only in exceptional circumstances." *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir. 1979) (citation omitted); *see Hernandez v. City of Peoria*, 135 F.4th 517, 527 (7th Cir. 2025) ("We construe the Rule 807 requirements narrowly." (citations omitted)).

The government argues that it need not provide information that is not required under Federal Rule of Evidence 803(6) and that Defendant has not adequately shown unreliability to justify excluding the challenged Telegram records. This position flips the evidentiary burden and ignores the fundamental evidentiary issue: that the government, unable to satisfy Rule 803(6), must offer something else that comparably shows reliability to justify admitting the purported Telegram records via Rule 807's residual exception. *See Harris v. City of Chicago*, 327 F.R.D. 199, 201 (N.D. Ill. 2018) (requiring "circumstantial guarantees of trustworthiness equivalent to those inherent in the more specific hearsay exceptions" (internal quotation marks and citation omitted)). To evaluate the issue, the Court does not assume admissibility of uncertified and unauthenticated evidence and require Defendant to prove otherwise, but instead holds the government to its burden of showing admissibility under the "totality of the circumstances," which here are lacking. Fed R. Evid. 807(a)(1); *Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 640 (N.D. Ill. 2012) ("[T]he proponent of hearsay bears the burden of establishing that the statement is admissible.").

Rule 803(6)'s requirements for business records are a useful guide from which to assess whether the evidence is sufficiently trustworthy under Rule 807 because the government essentially claims that the evidence is a business record but offers it instead under Rule 807 because Telegram would not certify the information under Rule 803(6)(D). (*See* Dkt. 178-1 Ex. D.) *See Harris*, 327 F.R.D. at 201 (requiring "circumstantial guarantees of trustworthiness equivalent to those inherent in the more specific hearsay exceptions" (internal quotation marks and citation omitted)). There are several issues with the evidence that would fail Rule 803(6) and likewise fail to provide adequate indicia of trustworthiness under Rule 807. The government seeks to admit the evidence as if it were a certified regular business record by using Rule 807's residual exception as a backdoor, even though the evidence was neither certified nor created in the regular course of business and was specially created for use in future judicial proceedings—each of which would preclude admissibility under Rule 803(6) and cannot be ignored merely by recharacterizing any meager indicia of reliability under Rule 807 rather than Rule 803(6).

For starters, neither Telegram nor the government has identified anyone involved in generating or sharing the Telegram information with the FBI via the content-referral-u1@telegram.org email address, so the Court cannot begin to evaluate any relevant person's character for truthfulness, the context of their statement, the existence or non-existence of corroborating evidence from that person or others at Telegram, and why no Telegram representative is available to offer the evidence at trial. Instead, the government offers only an email purportedly

4

containing uncertified and unauthenticated Telegram user information. The email and other materials lack any meaningful explanation of how or by whom the records were generated and whether they are accurate or reliable, except to note that the information generally could not be obtained from Telegram's technical systems but that unidentified persons were somehow "able to activate additional logging for the accounts in question." (Dkt. 167-2; Dkt. 178-1 Ex. B.)

The government's supplemental affidavits from FBI agents state that the content-referral-u1@telegram.org email address from which the records at issue were provided has been a contact point in other investigations. (*See* Dkt. 178-1 ⁋ 11.) This does not address the fundamental issue that nobody has explained how the particular records and statements contained within this email were obtained or verified so as to make them admissible at trial. Though the evidence that was somehow generated and sent to the FBI may have been helpful to the investigation—as hearsay statements often are—that does not make it admissible, and the government has not pointed to other cases in which similar Telegram records were admitted without additional foundation or indicia of trustworthiness. The Court must evaluate not only whether the email at issue was affiliated with Telegram but whether the statements within the email are themselves sufficiently reliable to be offered at trial without any supporting witness or further foundation or showing of reliability. *See United States v. Borrasi*, 639 F.3d 774, 780 (7th Cir. 2011) ("[S]tatements made by third parties in an otherwise admissible business

record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception." (citation omitted)).

The information that the FBI received via email from an unidentified author at content-referral-u1@telegram.org also is unreliable because the email itself states that the records and information generally would not be obtainable by Telegram "due to Telegram's technical structure." (Dkt. 167-2; Dkt. 178-1 Ex. B.) But in order to assist the FBI "following [its] request," someone was "able to activate additional logging for the accounts in question," which allowed Telegram to generate the evidence it then provided to the FBI. (*Id.*) Importantly, the email suggests that by "activat[ing] additional logging," Telegram activated a way to generate new records for the FBI—rather than accessing preexisting, ordinary records already logged in its system. *See Log*, MICROSOFT COMPUTER DICTIONARY (5th ed. 2002) ("A record of transactions or activities that take place on a computer system."), https://burmastarrecords.wordpress.com/wp-content/uploads/2009/12/microsoft_computer_dictionary__fifth_edition1.pdf. The email does not explain what this "additional logging" was, how it was activated and generated the records provided to the FBI, who did so (and the degree to which a human being was involved in the process), where they were located and where the data was accessed,[2] why the

---

[2] The subpoena was issued from the Northern District of Illinois, it was directed to a Telegram business address in the United Arab Emirates and to email addresses for requests made by United States and European authorities, and the correspondence from Telegram's counsel came from the British Virgin Islands. (Dkt. 178-1 Ex. A, Dkt. 178-4.) Telegram has repeatedly said it is not subject to United States jurisdiction and provided no indication of where relevant personnel are located, where the data and records Telegram generated were kept or accessed, or what country's data and privacy laws applied to Telegram's data systems and collection.

information the FBI sought generally would not be accessible, and ultimately whether the generation methods used here were trustworthy and reliable. Telegram created and shared the evidence to help the FBI's investigation but without honoring the subpoena or offering other indicia of trustworthiness to make the evidence admissible at trial. The circumstances thus do not warrant admission under Rule 807. *See Murphy v. Caterpillar Inc.*, 140 F.4th 900, 908 (7th Cir. 2025) ("To be admissible as a business record, a document must have sufficient indicia of trustworthiness to be considered reliable." (citation omitted)); *Harris*, 327 F.R.D. at 201 (requiring "circumstantial guarantees of trustworthiness equivalent to those inherent in the more specific hearsay exceptions" (internal quotation marks and citation omitted)).

The government misreads *United States v. Keplinger*, 776 F.2d 678 (7th Cir. 1985), which held that a trial court did not abuse its discretion in admitting business records containing some inaccuracies. The *Keplinger* analysis was done under Rule 803(6), for which foundation had been laid at trial via live testimony about how the records were generated. *Keplinger* at 694–95. The Seventh Circuit therefore concluded that the trial court could admit the evidence without abusing its discretion.[3] But the court added, "Of course, the source of the information about or the circumstances surrounding the preparation of a document may indicate that the document is insufficiently trustworthy to be admissible" and explained that its

---

[3] Given the abuse-of-discretion standard, the court's holding also does not mean that the evidence at issue in *Keplinger* must have been admitted, or even that admitting it was the right decision—only that admitting it was not an abuse of discretion.

ruling was directed to "inaccuracies apparent on the face of a document (as opposed to testimony about the unreliability of the procedure used to prepare it)." *Id.*

Here, we know nothing about the procedure used to prepare the Telegram records except that Telegram generally would not have been able to obtain the information based on the FBI's request and someone activated special "additional logging" to generate records that did so. Nobody at Telegram has certified, testified, or offered any explanation about how they were generated this evidence or its accuracy—in fact, Telegram has refused to do so. This leaves the Court with no way to consider whether the procedures used to prepare the evidence were reliable. The *Keplinger* decision suggests that circumstances like these could require exclusion even for certified business records with supporting foundation testimony under Rule 803(6). Here, where the evidence is uncertified and lacks foundation about how or by whom it was generated, exclusion is even more appropriate. It would be nonsensical to recognize that evidence is inadmissible under Rule 803(6) where the challenging party presents testimony that the procedures used to generate the evidence were unreliable, as *Keplinger* indicates, but also find that such evidence is admissible under Rule 807 when, as here, the challenging party cannot present testimony of unreliability because almost nothing is known about the procedures and people that generated the evidence and no Telegram witness has been made available from whom trustworthiness can be assessed.

Even if the evidence at issue had been part of ordinary business records, such records may not be admitted "if the regularly conducted business activity is the

8

production of evidence for use at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009). Here, the Telegram records were obtained from an email address reserved for communications and cooperation with law enforcement. (Dkt. 178-4 (Telegram's attorney confirming that the address "is Telegram's non-public contact point for voluntary disclosure requests from law enforcement . . . through which Telegram cooperates with relevant entities on a daily basis").) And the email that provided the evidence to the FBI emphasized that it generally could not be obtained due to Telegram's technical structure but had been specially generated via unspecified activation of "additional logging" in order to assist the FBI. Accordingly, the evidence Telegram provided to the FBI was not a business record that Telegram had already generated in its regular activities, but instead was evidence that Telegram generated in order to assist the FBI in its criminal investigation. It therefore would not meet Rule 803(6) and likewise fails Rule 807. *See Melendez-Diaz*, 557 U.S. at 321 (reiterating case law that a report is not a business record when, even if "kept in the regular course of the [business's] operations, it was 'calculated for use essentially in the court, not in the business'" (quoting *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943))).

To address some of the evidentiary issues in its Telegram records, the government relies on Telegram's Frequently Asked Questions webpage, which says that if Telegram "receives a valid order from the relevant judicial authorities," it "will perform a legal analysis of the request and may disclose your IP address and phone number to the relevant authorities." (Dkt. 167-3 p. 9.) Though the

unidentified "Telegram Team" provided the unverified user information the government seeks to admit as evidence in this case, its attorney explained to the government that "Telegram is able to release personal data lawfully if it receives a valid request" but that the government's request was not submitted through the proper procedures and Telegram "is not subject to the jurisdiction of the statutes/legislation pursuant to which the Letter has purported to have been served." (Dkt. 178-4.) Neither Telegram's attorney nor any other Telegram representative has confirmed the accuracy of the information sent to the government, that it was generated consistently with the information on Telegram's Frequently Asked Questions webpage, or that it is otherwise reliable. Instead, Telegram's attorney said that Telegram had *not* received a valid order, and the email the FBI received itself noted that the evidence was not generated according to Telegram's typical process and logging. Telegram's webpage, therefore, does not meaningfully inform the reliability inquiry or suggest trustworthiness to justify admitting the evidence at trial.

This is not a case where the government's evidence merely misses a technicality for the business records exception under Rule 803(6) but is otherwise comparably reliable and trustworthy under Rule 807 and so can be admitted. *See Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983, 992 (N.D. Ill. 2015) (recognizing the "'near-miss' approach, holding that Rule 807 is applicable to hearsay of a type that a more specific rule also addresses, even if the particular hearsay evidence at issue does not quite meet the criteria for admission under the

more specific rule"). Instead, the Telegram evidence here raises several reliability issues that preclude admission. The government should not be allowed to admit materials which would fail as business records under Rule 803(6) and lack comparable indicia of trustworthiness to be presented at trial under Rule 807. *See Akrabawi v. Carnes Co.*, 152 F.3d 688, 697–98 (7th Cir. 1998) ("noting this circuit's emphasis on narrowly construing the residual provision to prevent it from becoming the exception that swallows the hearsay rule" and affirming exclusion of evidence where, among other things, it relied on testimony of an attorney "rather than the actual custodian of records"). The Court therefore should exclude the government's Telegram records as inadmissible hearsay.

## II. Admitting the Telegram records would violate the Confrontation Clause

The Sixth Amendment's Confrontation Clause "guarantees a defendant's right to confront those who bear testimony against him." *Melendez-Diaz*, 557 U.S. at 309 (internal quotation marks and citation omitted). "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Id.* The Confrontation Clause "imposes a burden on the prosecution to present its witnesses." *Id.* at 324. Here, the evidence generated by Telegram and provided to the FBI constitutes a testimonial statement about which Defendant has no opportunity for cross-examination. The evidence therefore must be excluded based on the Confrontation Clause.

11

Telegram's attorney has confirmed that the government's request for information from Telegram was not properly made and did not legally require Telegram to share any information. The content-referral-u1@telegram.org email address purportedly belonging to Telegram specifically for communications with American law enforcement further responded that the information generally would have been obtainable from Telegram's technical system and its existing records. Nevertheless, the email claimed that Telegram was "able to activate additional logging" to generate new records with information to assist the investigation.

The email from content-referral-u1@telegram.org thus indicates that the records it generated were tailored to the FBI's criminal investigation and for the purpose of prosecution rather than in the ordinary administration of Telegram's affairs. The records therefore trigger the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 822 (2006) ("[Statements] are testimonial when the circumstances objectively indicate that there is no [] ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). As an aside, case law's reference to "interrogations" "is not to imply . . . that statements made in the absence of any interrogation are necessarily nontestimonial." *Davis*, 547 U.S. at 822 n.1; *see also United States v. Hubbell*, 530 U.S. 27, 36 (2000) (in the Fifth Amendment context, "we have also made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect"). The Confrontation Clause applies to the Telegram records here regardless of their

12

written form, especially since they were provided to law enforcement in response to a subpoena by an email address purportedly reserved for communications and cooperation with law enforcement.

The Telegram records and their surrounding circumstances "reflect a primary purpose aimed at obtaining testimonial evidence against the accused." *Ohio v. Clark*, 576 U.S. 237, 245 (2015); *see also Michigan v. Bryant*, 562 U.S. 344, 358 (a statement is testimonial evidence when it is "procured with a primary purpose of creating an out-of-court substitute for trial testimony"). The evidence was generated in response to a subpoena and request sent by the FBI to Telegram's non-public email address for cooperation with American law enforcement agencies. The email represented that the evidence provided to the FBI was not generated according to Telegram's typical processes for its technical system but instead via special technical work and record generation done to assist the FBI's investigation. The evidence thus was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" and so constitutes testimonial evidence that implicates the Confrontation Clause. *Melendez-Diaz*, 557 U.S. at 311, 324. Like in *Melendez-Diaz*, the records Telegram generated and shared here, "[w]hether or not they qualify as business or official records," were "prepared specifically for use at [Defendant's] trial" and therefore constitute "testimony against [Defendant]" that requires "confrontation under the Sixth Amendment." *Id.* at 324; *see also United States v. Webster*, 775 F.3d 897, 901 (7th Cir. 2015) ("[W]e have repeatedly held that the

13

government may not introduce forensic laboratory reports or affidavits reporting the results of forensic tests and use them as substantive evidence against a defendant unless the analyst who prepared or certified the report is offered as a live witness subject to cross-examination.").

The government offers no rationale for why admission of the evidence here, if testimonial, could satisfy the Confrontation Clause. No witness for the evidence has been identified and Defendant has no opportunity to cross-examine anyone about it. And the parties' separate disputes about reliability and trustworthiness are irrelevant since adherence to the Confrontation Clause does not depend on "the vagaries of the rules of evidence, much less amorphous notions of 'reliability.'" *Crawford v. Washington*, 541 U.S. 36, 61 (2004). Therefore, even if the Court were to believe that the purported Telegram records are reliable, the Confrontation Clause requires exclusion because "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Id.* ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty."); *see Hemphill v. New York*, 595 U.S. 140, 154 (2022) ("Courts may not overlook [the Confrontation Clause's] demand, no matter how noble the motive.").

Defendant's inability to confront the evidence at issue here is especially concerning because the evidence generally would not have been obtainable "due to Telegram's technical structure" and resulted from the activation of "additional logging" to create it in order to assist the FBI. Defendant must be able to

14

cross-examine the relevant Telegram representative(s) about, for example, Telegram's technical structure, the "additional logging" used to generate the Telegram evidence offered against Defendant, who generated this evidence, and the evidence itself, so the jury can properly assess it and its accompanying witness. Since no witness is available, the Confrontation Clause requires exclusion of the evidence. *Melendez-Diaz*, 557 U.S. at 314 (there is no category of witnesses who are "helpful to the prosecution, but somehow immune from confrontation"). Just as "a prosecutor cannot introduce an absent laboratory analyst's testimonial out-of-court statements to prove the results of forensic testing," the government may not present the testimonial evidence of unidentified personnel that was specially generated to assist the FBI in its criminal investigation against Defendant without also making that personnel available for cross-examination. *Smith v. Arizona*, 602 U.S. 779, 783 (2024) (the Confrontation Clause "bars the admission at trial of testimonial statements of an absent witness unless she is unavailable to testify, and the defendant has had a prior opportunity to cross-examine her" (internal quotation marks and citation omitted)); *see also Roalson v. Noble*, 116 F.4th 661, 666 (7th Cir. 2024) ("The state cannot introduce a report with testimonial conclusions into evidence without producing the analyst who prepared the report."). The Telegram records, therefore, must be excluded under the Confrontation Clause.

## III.  Conclusion

For these reasons, the Court should deny the Government's supplemental motion *in limine* to admit Telegram records (Dkt. 167).

15

Respectfully Submitted,

By: s/ Jonathan S. Bedi

Jonathan S. Bedi
Dena M. Singer
Matthew Lind
Bedi & Singer, LLP
53 West Jackson Blvd, Suite 1101
Chicago, IL 60604
Phone: (312) 525-2017
dsinger@bedisinger.com
jbedi@bedisinger.com
mlind@bedisinger.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing document was filed via the Court's ECF system.

<u>/s/ Jonathan S. Bedi</u>
Jonathan S. Bedi
Bedi & Singer, LLP
53 West Jackson #1101
Chicago, IL 60604
(312) 525 2017
jbedi@bedisinger.com