UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADAM STAFFORD KING | No. 24 CR 153<br><br>Hon. LaShonda A. Hunt |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL CONSOLIDATED MOTIONS IN LIMINE**

## I. Introduction

The United States of America, by its attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, respectfully submits this response in opposition to defendant Adam Stafford King's supplemental consolidated motions *in limine* (Dkt. 227). Defendant seeks to (1) categorically exclude TRULINCS email communications relevant to the attempted obstruction of justice charge in Count Five of the Third Superseding Indictment, and (2) restrict the government's references to defendant's pretrial detention. Neither request is warranted.

Defendant's first motion rests on the mistaken premise that the government cannot authenticate electronic communications without conclusively establishing their authorship and that all out-of-court communications necessarily constitute hearsay. Neither proposition is correct. The government can authenticate the TRULINCS communications through witness testimony, records, and corroborating evidence linking the communications to their purported participants. Moreover, many of the communications contain commands and questions that are not hearsay, while others are admissible for purposes independent of their truth.

Defendant's second motion overlooks the relevance of his detention to Count Five. Defendant's incarceration is not an incidental or gratuitous detail. Rather, the alleged obstruction scheme involved individuals incarcerated at the Metropolitan Correctional Center ("MCC") and their outside contacts. The government must be permitted to explain where and how the scheme originated, the relationships among its participants, and the means by which the fabricated messages were transmitted. The probative value of that evidence is substantial and is not substantially outweighed by any risk of unfair prejudice.

For these reasons, defendant's motions should be denied.

## II. Factual Background

As the government will establish at defendant's upcoming trial, in November 2023, defendant exchanged child pornography with Bryan Austermann over Telegram, for which defendant is charged with the distribution and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Counts One and Two, respectively). In December 2023, defendant sent additional child pornography to an individual who, unbeknownst to defendant, was an undercover law enforcement officer—again, over Telegram—for which defendant is charged with an additional count of distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count Three). When the FBI executed a search warrant at defendant's residence in March 2024, defendant deleted Telegram from his cell phone, for which he is charged with obstruction of justice, in violation of 18 U.S.C. § 1519 (Count Four).

Since the outset of this prosecution, defendant has maintained that someone else used his identity to commit the charged child pornography offenses. Defendant's

case was set to proceed to trial in May 2026. Dkt. 144. In the lead up to trial, defendant caused individuals to send falsely exculpatory text messages to his parents for the purpose of having those messages presented to the U.S. Attorney's Office. Those messages, which purported to come from the actual perpetrator, were subsequently provided to the government by defendant's attorneys in February and March 2026. The government's investigation revealed that one of defendant's fellow inmates at the MCC, Jarvis Alexander, used his TRULINCS email account and the MCC phone account belonging to defendant's MCC cellmate, Jerome Smith, to direct two individuals, Rebecca Buick and Tawanna Blake, to send text messages to defendant's parents, including, as reflected below, messages stating, "How does it feel having yo son locked up for what I did?"




This conduct forms the basis of Count Five, which charges defendant with attempted obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2).

## III. Defendant's Motion to Exclude the TRULINCS Communications Should be Denied

Defendant seeks to exclude all TRULINCS email communications on the grounds that the government cannot establish their authorship under Federal Rule

of Evidence 901 and that "each and every email" communication constitutes inadmissible hearsay. Neither argument supports the blanket exclusion defendant requests.

### A. The government can authenticate the TRULINCS communications through witness testimony and corroborating evidence.

Defendant conflates the threshold requirement of authentication with conclusive proof of authorship. Rule 901 imposes no such requirement. Rather, Rule 901(a) requires only that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Seventh Circuit has recognized that "there are no rigid rules, such as chain of custody, for authentication; all that is required is adequate evidence of genuineness." *United States v. Dawson*, 425 F.3d 389, 392 (7th Cir. 2005). "Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury." *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012).

Authentication may be established through circumstantial evidence, including a document's identifying information, contents, and distinctive characteristics. Fed. R. Evid. 901(b)(4) ("The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."); *see Fluker*, 698 F.3d at 999 (recognizing that circumstantial evidence may sufficiently authenticate emails even where the purported author does not testify).

Here, the government will establish the authenticity of the TRULINCS communications through account records, witness testimony, and corroborating

evidence. An MCC representative is expected to testify concerning the operation of TRULINCS, the assignment of inmate accounts, and the preservation of communications sent and received through those accounts. The government will also present testimony from participants in the communications themselves and introduce corroborating evidence, including witness testimony, stipulations of fact, recorded telephone calls, and the text messages sent to defendant's parents, demonstrating that the actions discussed in the communications were subsequently carried out by Blake.

Moreover, the communications themselves contain identifying information. As reflected in the example below, Alexander's TRULINCS account identifies him by his full name ("ALEXANDER, JARVIS") and inmate number ("17878509"), while Blake's email address contains her full name ("tawannablake1@gmail.com).



Date: 03/24/2026
Time: 04:00 PM

Facility: CCC

Federal Bureau of Prisons
TRULINCS
**Message**
Sensitive But Unclassified

**Message**

FROM: 17878509 ALEXANDER, JARVIS
TO: "Tawanna Blake" <tawannablake1@gmail.com>
SUBJECT: RE: RE: yooo
DATE: 12/05/2025 01:34 PM

call and tell them to check the message

The contents of the communications are also corroborated by Blake's actions and her recorded telephone conversations with Alexander. For example, on January 28, 2026, Alexander instructed Blake to "text and ask them is they ready to see they grandson." That same day, Blake sent defendant's parents a text asking, "Are you ready to see your grandson? And happy new year." In another exchange,

Alexander directed Blake to "just call and hang up," an instruction subsequently discussed during a recorded jail call.

This combination of account information, testimony, and corroborating communications is sufficient to satisfy Rule 901. *See United States v. Barber*, 937 F.3d 965, 970–71 (7th Cir. 2019) (finding Facebook messages sufficiently authenticated through witness testimony and corroborating circumstantial evidence). Once the government makes the required prima facie showing, any remaining dispute concerning authorship is for the jury to resolve and goes to the weight of the evidence, not its admissibility. *Fluker*, 698 F.3d at 999. Accordingly, defendant's authentication objection provides no basis for excluding the TRULINCS communications.

### B. The TRULINCS communications are not categorically hearsay because they contain commands, questions, and statements offered for purposes other than their truth.

Defendant argues that the TRULINCS emails are "textbook hearsay" and that "[e]ach and every email" must therefore be excluded. Dkt. 227 at 2. But defendant does not identify a single statement that he contends is inadmissible. Instead, he seeks categorical exclusion without considering the content of the communications or the purposes for which the government offers them.

Under Rule 801(c), hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). As the Seventh Circuit has explained, statements offered for purposes other than proving the truth of the matter asserted are not hearsay. *United States v. Bursey*, 85 F.3d 293, 296 (7th Cir.1996). Commands and questions ordinarily are not hearsay because they are not assertions

of fact. *United States v. White*, 639 F.3d 331, 337 (7th Cir. 2011) (holding that a written demand directing a bank employee to turn over money was a command, not hearsay); *United States v. Thomas*, 453 F.3d 838, 845 (7th Cir. 2006) (recognizing that a question was not a hearsay statement); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("In other words, statements assert propositions that may be true or false. They are distinct from other forms of communication, such as questions or commands."). Likewise, statements offered to explain their effect on the listener or to place other admissible communications in context are not hearsay when they are not offered for their truth. *See United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002); *United States v. Gaytan*, 649 F.3d 573, 579–80 (7th Cir. 2011) (recognizing the admissibility of statements offered to provide context).

These principles apply directly to the TRULINCS communications. Alexander repeatedly instructed Blake to send specific messages, verify telephone numbers, and make additional contact attempts. The government offers those instructions to establish that they were given and to demonstrate how the messages were generated and transmitted—not to prove the truth of any factual assertions. Other communications consist of questions seeking confirmation that Blake had completed the requested tasks. Still others provide context necessary to understand the instructions and responses that followed.

For example, on January 28, 2026, Alexander instructed Blake to "text and ask them is they ready to see they grandson." After Blake reported that she had sent the text but received no response, Alexander instructed her to "just call and hang up

baby." Alexander's instructions are non-hearsay commands. Blake's intervening statement is relevant to explain why Alexander gave the subsequent instruction; the government need not rely on its truth to establish the sequence of communications. Similarly, when Blake supplied three digits of a telephone number, Alexander corrected them and directed her to repeat the contact attempt. That exchange is relevant to show what information was conveyed and how Alexander directed Blake to proceed, regardless of whether the digits were correct.

The following chart identifies the TRULINCS communications the government presently intends to introduce and their principal non-hearsay purposes or other bases for admissibility:

| Date | Message | Basis for Admissibility |
|---|---|---|
| 12/05/2025 | ALEXANDER: "call and tell them to check the message" | Command |
| 12/05/2025 | ALEXANDER: "they never said nothing back baby??" | Question |
| 12/06/2025 | ALEXANDER: "baby i believe i gave you the wrong number"<br><br>BLAKE: "Wow why u say dat"<br><br>ALEXANDER: "because they not responding baby im finna give you another number baby" | Question; statements explaining ALEXANDER's concern about the number and his intention to provide another one. Not offered to prove that the original number was wrong or that the recipients failed to respond |
| 12/06/2025 | ALEXANDER: "ok well look call and tell them to check they messages baby" | Command |
| 12/07/2025 | ALEXANDER: "baby i couldent get on the phone ill call you in the morning please dont forget to do that for me baby with the other number" | Command and statement of future intent under FRE 803(3) |

| | | |
|---|---|---|
| 01/08/2026 | ALEXANDER: “yeah im cool baby i guess a fuse had blew last night so are computer was down but the back up and running now my love a baby did you ever text that number for me my love” | Question |
| 01/08/2026 | ALEXANDER: “yeah remember i had told you to send another one remember i told you to say happy new year is you ready to see your grandson” | Context and identification of the message ALEXANDER directed BLAKE to send; not offered to prove that the earlier instruction was given |
| 01/22/2026 to 01/23/2026 | ALEXANDER: “baby do you still have them numbers i told you to text baby?? the one that start with a 8”<br><br>BLAKE: “I’m have to switch to see”<br><br>ALEXANDER: “ok switch and let me know because i need you send you a message” | Questions, statement of intended action, and command |
| 01/27/2026 | ALEXANDER: “baby did you ever check and see if you got that number still baby”<br><br>BLAKE: “The 812 right”<br><br>ALEXANDER: “yes my love thats it” | Questions and confirmation identifying the number ALEXANDER intended BLAKE to use; not offered to prove it’s accuracy |
| 01/28/2026 | ALEXANDER: “text and ask them is they ready to see they grandson”<br><br>BLAKE: “I text no response do u want me to call n say ur grandson said reply back?”<br><br>ALEXANDER: “nawww just call and hang up baby” | Commands and question; BLAKE’s report of nonresponse provides context for ALEXANDER’s subsequent instruction, not substantive proof of nonresponse |
| 02/01/2026 | ALEXANDER: “ok my love good night my everything i love you idk why they saying they didnt get the message but i know you sent it” | Limited contextual purpose: explains ALEXANDER’s subsequent efforts to verify and repeat the communications; not offered to prove that anyone reported nonreceipt or that BLAKE sent the message |

| | | |
|---|---|---|
| 02/02/2026 to 02/03/2026 | ALEXANDER: "ok cool whats the first 3 digits after area code and thank you baby i love you what you got going on how you coming??"<br><br>BLAKE: "Four four nine"<br><br>ALEXANDER: "baby thats wrong im sorry redo it... its four nine nine"<br><br>ALEXANDER: "yeah just redo it though my love" | Question, communication and correction of identifying information, and commands; not offered to prove the accuracy of the phone number and contextualize the correction and further instructions, not the actual accuracy of the number. |
| 02/04/2026 | BLAKE: "Wats the 4 digit pin"<br><br>ALEXANDER: "ill call you tomorrow with it baby i love you good night" | Question and statement of future intent under FRE 803(3) |
| 02/07/2026 | ALEXANDER: "baby wassup what you on did you ever try to redo it my love" | Question |

As the chart demonstrates, many of the TRULINCS communications consist of non-hearsay commands and questions, while others are offered to explain the instructions and responses that followed. As such, defendant's motion to categorically exclude all TRULINCS communications should be denied.

## IV. Defendant's Motion to Limit References to His Custody Status Should Be Denied

Defendant also seeks to restrict references to his incarceration at the MCC on the grounds that repeated references to his custody status could unfairly prejudice the jury. Dkt. 227 at 2–3. Defendant's motion should be denied because his incarceration is directly intertwined with the conduct charged in Count Five, and the probative value of that evidence is not substantially outweighed by any risk of unfair prejudice.

Defendant's reliance on *Estelle v. Williams*, 425 U.S. 501 (1976), is misplaced. Dkt. 227 at 2–3. In *Estelle*, the Supreme Court found that a defendant's prison attire is "likely to be a continuing influence throughout the trial" unrelated to the evidence of guilt, and that requiring a defendant to appear at trial in such attire was likely to undermine the presumption of innocence and the defendant's right to a fair trial. *Estelle*, 425 U.S. at 504–05. The defendant in *United States v. Johnson*, 624 F.3d 815 (7th Cir. 2010), tried to extend the reasoning from *Estelle* to the introduction of calls he made from the county jail while awaiting trial that opened with an announcement identifying the jail. *Johnson*, 624 F.3d at 820. The defendant argued that letting the jury hear the calls put him in the position of a defendant forced to wear prison attire. *Id.* at 821. The Seventh Circuit disagreed, distinguishing the prison-garb cases because an occasional reference to a defendant's incarceration was not the equivalent of the constant reminder supplied by distinctive prison clothing. *Id.* at 821–22.

The same reasoning applies here with even greater force because defendant's incarceration is integral to understanding the charged obstruction scheme in Count Five. The government expects to establish that Alexander was housed on defendant's MCC cellblock and that Smith was defendant's cellmate. Alexander communicated with Buick and Blake using an MCC telephone account registered to Smith, and the messages sent by Buick and Blake at Alexander's instruction were ultimately provided to the government as purportedly exculpatory evidence. These relationships

and communications explain how the alleged scheme operated and connect defendant to the individuals involved in transmitting the messages.

The relevance of defendant's incarceration is further supported by a stipulation he has already signed and returned to the government. Under that stipulation, defendant's father, Kirby King, would testify that, "[a]fter being charged in this case, Kirby King's son was detained at the Metropolitan Correctional Center in Chicago. As far as Kirby King was aware, no one at the Metropolitan Correctional Center other than his son knew his personal cell phone number." This evidence is particularly probative because the messages were sent to the personal telephone numbers of defendant's parents, and the jury will need to evaluate how those numbers came to be used by individuals connected to the MCC.

Unlike the prison attire at issue in *Estelle*, the limited references to defendant's detention here serve a legitimate evidentiary purpose. And unlike the defendant in *Johnson*, defendant is charged with an offense whose alleged execution depended on relationships formed and communications made within the detention facility.

Nor does Rule 403 warrant exclusion. Evidence is unfairly prejudicial under Rule 403 only if it will induce the jury to decide the case on an improper basis rather than on the evidence presented. *United States v. Chambers*, 642 F.3d 588, 594 (7th Cir. 2011). Here, evidence concerning defendant's incarceration at the MCC, his relationship and proximity to Smith and Alexander, and the use of inmate communication accounts is highly probative of the alleged obstruction scheme.

The government does not intend to "constantly emphasize Mr. King's in custody status," Dkt. 227 at 3, or suggest that his detention reflects guilt. Rather, it seeks to present the evidence necessary to establish the alleged obstruction scheme. Any residual risk of prejudice can be addressed by an appropriate limiting instruction reminding the jury that defendant's pretrial detention is not evidence of his guilt and must not influence the jury's determination of the charges.

Defendant's request for an undefined restriction on references to his custody status should therefore be denied.

## V. Conclusion

For the foregoing reasons, the Court should deny defendant's supplemental consolidated motions *in limine*.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Asheeka Desai*
ASHEEKA DESAI
JARED C. JODREY
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-2050